**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**SHERRY CORINE CORPORATION, Appellee.**

**No. 7784.**

United States Court of Appeals Fourth Circuit.

Argued Jan. 20, 1959.

Decided March 13, 1959.

Sylvia S. Ellison and Beate Bloch, Attys., U. S. Dept. of Labor, Washington, D. C. (Stuart Rothman, Sol., and Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C., on the brief), for appellant.

Robert R. MacMillan, Norfolk, Va. (Breeden, Howard & MacMillan, Norfolk, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This action was instituted by the Secretary of Labor under the Fair Labor Standards Act, 29 U.S.C.A. Sec. 201 et seq., to enjoin the Sherry Corine Corporation from violating the minimum wage and related sections of the statute at the restaurants which it operates at the Municipal Airport in Norfolk, Virginia. The defendant contended that its employees were not covered by Secs. 6 and 7 of the Act since they were not engaged in commerce or in the production of goods for commerce, as defined in Sec. 3 thereof, and also because the business was a retail or service establishment within the meaning of Sec. 13 of the Act. The District Judge sustained these defenses and dismissed the complaint.

The Corporation operates a coffee shop on the first floor and a dining room and kitchen on the second floor of the airport building. It employs 45 persons, including a chef, 2 assistant chefs, 10 helpers and 10 bus boys. In addition to the patrons of the two restaurants, it regularly supplies meals to Capital Airlines and National Airlines to be served to their passengers enroute on flights leaving Norfolk for destinations outside the State of Virginia. This business produces between 46 per cent and 49 per cent of the Corporation's annual gross revenue.

The Capital Airlines purchases meals prepared according to its specifications at an agreed price for three of its sixteen flights leaving Norfolk each day. It notifies the defendant three hours before flight time how many meals will be required but reserves the right of cancellation one and a half hours prior to time of departure upon payment of half price. An hour before flight time the restaurant prepares the required number of trays, eight to a carrier, placing upon each tray the necessary accessories. Hot foods prepared in the kitchen in casserole dishes are kept hot in electric ovens. This equipment is the property of Capital Airlines. The trays and ovens are delivered to the planes and put in place by the defendant's bus boys twenty minutes before departure. Empty ovens, carriers and soiled equipment are removed from the plane and cleaned in de-

fendant's kitchen. The airline hostess aboard the plane serves the passengers after the plane has reached cruising height, and generally the meal has not been served and eaten until after the plane has left the State. In the case of one flight, service is not commenced until the plane has made its first stop in North Carolina. Southbound and westbound flights cross the State's borders in eight to twelve minutes; northbound flights in twenty-four to thirty-five minutes. The planes carry from twenty-four to fifty-seven passengers. The defendant also provides coffee and fruit juices for other flights, and special cleaning service for planes from out-of-state that stay in Norfolk overnight. The defendant's arrangement with National Airlines is similar in all material respects to its arrangement with Capital Airlines.

The airlines serve meals on certain first class flights without specific additional charge. This practice has been a competitive factor in air transportation. The expense is recognized as part of the cost of operation which enters into the authorized rate structure. On cheaper flights the Civil Aeronautics Board does not permit the furnishing of meals except for a charge over and above the cost of the ticket. The airlines are not under contract to furnish complete meals but the passengers have come to expect them, and sometimes when a flight is delayed meals are served to them in defendant's restaurant at the airport at the expense of the airline.

█ The initial question is whether the Corporation's kitchen employees and bus boys are "in commerce" or "in the production of goods for commerce" within the meaning of Sec. 6(a) of the statute. It is generally held that employees engaged in producing goods for instrumentalities in commerce, such as railroads and ships, are engaged in the production of goods in commerce. Thus, in Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165, we held that workmen engaged in producing ice for sale to an interstate railroad for use in icing perishable freight, as well as food and beverages in dining cars, were covered by the statute. And in Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745, the Supreme Court held that employees of a manufacturer who produces a road surfacing mixture for use in the reconstruction and repair of interstate roads are engaged in the production of goods for commerce. See also Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518; Chapman v. Home Ice Co., 6 Cir., 136 F.2d 353, certiorari denied 320 U.S. 761, 64 S.Ct. 72, 88 L.Ed. 454; cf. Ben Kanowsky, Inc. v. Arnold, 5 Cir., 250 F.2d 47. In Armstrong Co. v. Walling, 1 Cir., 161 F.2d 515, it was held that workers in a commissary department, which served as a kitchen and storeroom for selling counters of sandwiches and milk in a railroad station, and also for the service of like articles on trains, were engaged in the production of goods for commerce; and in Mitchell v. Royal Baking Co., 5 Cir., 219 F.2d 532, it was held that employees of a bakery who furnished meals to cafeterias, which used them in the preparation of flight meals sold to airlines for use on planes, were similarly engaged. These decisions have not been deemed at variance with McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, where it was held that an employee who prepares meals for maintenance-of-way employees of an interstate railroad, under a contract between his employer and a railroad company, is not engaged in commerce within the meaning of the statute.

█ In opposition, the defendant contends that the case falls within the exception contained in Sec. 3(i) of the Act to the effect that the term "goods" does not include "goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." The activities of the employees of the defendant who deliver the constituents of the meals to the side of the ship for consumption by the passengers is likened to the service of waiters in the restaurant who set meals on tables

before the guests.* The evidence shows, however, that the meals are not furnished to the passengers by the defendant but by the airlines. Moreover, the arrangement not only serves the convenience of the passengers but also facilitates the interstate operations of the airlines by obviating the delays incident to the service of meals at the airport. In most instances the meals are consumed during flights from Virginia to neighboring states and it is of no consequence that they are delivered to the planes before the interstate movement begins. In Powell v. U. S. Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017, contractors producing munitions for the United States claimed that their products were excluded from coverage by Sec. 3(i) because they were delivered to the United States, the ultimate consumer, prior to interstate transportation, but the Court overruled this contention in these words (339 U.S. at pages 514–515, 70 S.Ct. at page 764):

"We hold, therefore, that the fact that the munitions were produced for delivery, into the actual physical possession of the United States as their ultimate consumer, before their subsequent interstate shipment, does not deprive the employees who produced the munitions of the benefits of the Fair Labor Standards Act. It is not material whether such interstate transportation was to take place before or after the delivery of the munitions to the United States. In either event, the employees were engaged in the production of 'goods' for 'commerce'. To hold otherwise would restrict the Act not only arbitrarily but also inconsistently with its broad purposes."

The defendant, however, strongly contends that even if the meals constitute goods produced for commerce, the employees of the restaurant engaged in preparing them are expressly excluded from coverage by Sec. 13(a) (2) of the Act relating to employees of a retail establishment, which is defined as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale, and is recognized as retail sales or services in the particular industry." Since the sales to the airlines constitute 46 per cent of the defendant's business this contention is not tenable unless it appears from the evidence (1) that the meals are not furnished to the airlines for resale and (2) that the sales are recognized as retail sales within the particular industry. The District Judge found, on the basis of substantial and uncontradicted evidence, that the defendant's operations, including its airline sales, are recognized in the industry as retail sales, and hence he held that the second component in the basis of the exemption had been established. The Government on its part does not consider or discuss the evidence bearing on this point but relies on the contention that the arrangement amounts to a sale of goods for resale and therefore falls outside the statutory exemption.

The principal basis for the defendant's contention that the goods are not furnished to the airlines for resale is that a specific separate charge is not made for the meals; and that they are furnished to the passengers as a complimentary service in much the same way as free hotel accommodations and limousine service are provided when flights are delayed. Since the fare charged between two points is the same whether or not it takes place at meal time, which constitutes about one-third of flight time, it is said that the meals constitute a gratuity, which is justified by the saving of expense that would be incurred by the airlines if their flights were delayed by waiting at a terminal while the passengers were at their meals in the restaurant.

In addition, our attention is called to the operations of the catering business where food is served in large quantities

---

* cf., Dial v. Hi Lewis Oil Co., D.C.Mo.1951, 99 F.Supp. 118.

at receptions, banquets and conventions, and the transactions are regarded as retail sales of goods to be consumed and not resold; and again the sales under consideration in the instant case are likened to the sales of such articles as soap, towels, paper cups and so forth, to hotels to be furnished to guests free of charge, in which situation it has been held that there is no resale of the articles to the guests although the cost of the goods undoubtedly enters into the charges for which the guests are billed. See Hotel Statler Co. v. District of Columbia, 91 U.S.App.D.C. 122, 199 F.2d 172.

We do not think that these considerations give sufficient weight to the rule that this exemption in the Act is to be narrowly construed and is not to be applied to situations except those plainly within its terms and spirit. See A. H. Phillips, Inc. v. Walling, 324 U.S. 490–493, 65 S.Ct. 807, 89 L.Ed. 1095. Obviously there is no resale of meals to the guests at a reception or to the members of an association when the food is bought by it with their funds for their consumption; and there is no practicable allocation of the cost of miscellaneous services of the kind described above rendered by a hotel to its guests as there can be in the case of meals bought for and consumed by a definite number of passengers embarked for a flight. Their meals are purchased by the airline not for self-consumption but for consumption by the passengers and although no separate specific charge is made, the cost is an operating expense taken into account in computing the rates of transportation. In some instances, moreover, meal service is an important factor which distinguishes first class flights from cheaper flights on which food is furnished only for an additional charge. The decisive factor, in our view, is that the meals are purchased by the airlines to be distributed by them to individual passengers for consumption and that the airlines are compensated for the cost by making it a constituent element for the charge for transportation. In a broad sense, it may fairly be said that there is

such a resale as to exclude the transactions from the retail exemption of the statute.

The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.