James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

FURMAN BEAUTY SUPPLY, INC., Defendant.

Civ. A. No. 6756.

United States District Court
M. D. Pennsylvania.

March 14, 1961.

Harold C. Nystrom, Acting Sol., Washington, D. C., Ernest N. Votaw, Regional Atty., U. S. Dept. of Labor, Chambersburg, Pa., for plaintiff.

Sidney E. Friedman, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

Plaintiff alleges that the defendant, Furman Beauty Supply, Inc., was engaged in interstate commerce and in the production of goods for interstate commerce and had employed some of its employees for work weeks longer than forty hours, without compensating them at rates not less than one and one-half the regular rate at which they were employed for employment in excess of forty hours. Accordingly, plaintiff seeks to enjoin the defendant from violating the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. § 201 et seq.)

We need not consider defendant's defense contained in its Answer "that it believes it is exempt from the application of the Act by virtue of the fact that * * it is engaged primarily in intrastate commerce and only in an insubstantial manner in interstate commerce" since defendant's second defense that "it is exempt by reason of Section 13(a) (2) of the (Fair Labor Standards) Act" is dispositive of the action.

This section (as 29 U.S.C.A. § 213) provides, inter alia, as follows:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within

the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * * "

In determining the applicability of this section in the instant case, we may start with certain facts which were agreed upon by the parties, namely:

1. The defendant's place of business is 416 Kelker Street, Harrisburg, Pennsylvania, at which place it displays and sells merchandise, and from which place of business it ships merchandise, by truck and other means, to customers, 98% of whom are within the State of Pennsylvania and approximately 2% are in the State of Maryland just over the border from Pennsylvania.[1]

2. The defendant sells to persons who operate beauty shops in which establishments beauty treatments are administered and hair dressing and styling performed.

3. The defendant also from time to time sells beauty shop equipment to be installed in beauty shops such as dryers, permanent waving equipment, cabinets, etc.

4. The merchandise sold to its customers is in small quantities.

5. The merchandise other than dryers, permanent waving equipment, cabinets, etc., consists of lotions and fluids and similar articles and are used by the hairdresser and beautician for the purpose of giving treatments to customers.

In the light of the testimony at the trial, I find further that:

6. All of the merchandise sold by the defendant other than dryers, permanent waving equipment, cabinets, etc., is used and consumed by its customers in the operation of their beauty establishments and in connection with services to the beauticians' customers. (Transcript of Record, Pages 29–31, 33, 34, 37.) [2]

7. The types of hair oils, et cetera, in which the defendant deals are not transferred in their original packages to the beauty parlors' customers but are sprayed on the customers' hair or otherwise used in giving the various types of treatment to the customer.

8. None of the merchandise sold by defendant to its beautician customers is resold by said customers but all of it is used and consumed in the various treatments administered by the beautician.

9. All of the sales made by defendant were retail sales recognized as such by this particular industry.

10. All of the sales made by defendant were retail sales recognized as such by the Commonwealth of Pennsylvania in its enforcement of its Selective Sales and Use Tax Act, March 6, 1956, 72 P.S. § 3403–1 et seq. See Commonwealth of Pennsylvania, Department of Revenue, Bureau of Sales and Use Tax, Form TRb–220.

11. All of the sales made by defendant were retail sales recognized by the Supreme Court of Pennsylvania. See Commonwealth v. Miller, 1940, 337 Pa. 246, 11 A.2d 141.

12. All of the sales made by defendant were retail sales as that phrase is

1. Records introduced in the course of the trial show that from July 1, 1956 to December 31, 1959 the total dollar volume of defendant's out of state sales averaged about 3.5% of defendant's total sales.

2. Plaintiff's counsel while not conceding the foregoing Finding of Fact in its entirety, stated: "I think it is the case that most of the merchandise sold by the defendant to its customers is used by the customers in the operation of their beauty parlors in connection with service to the customer, the beauty shop. Perhaps a very small portion of it may be sold by that beauty shop to the beauty shop's customer, but not anywheres near 25 per cent. So that portion of it is not the basis, not that part of it that is resold as received in jars or whatever container they may be in, to the customers in the beauty shop—that is not the basis for our contention that more than 25 per cent is for resale."

understood by the common run of men. See Haynie v. Hogue Lumber & Supply Co. of Gulfport, Inc., 1951, D.C.S.D.Miss., 96 F.Supp. 214.

I am fully aware of the extreme liberality of the courts in the interpretation of this Act, and with this approach I am in complete accord. However, I do not think that in the interpretation of the Act the courts should lend themselves to a twisted and distorted concept of the meaning of plain and ordinary words as they are used in the exemption allowed by the Act.

According to the testimony in this case, not merely 75% but 100% of the annual dollar volume of sales of goods or services were *not* for resale and, as we have found, were recognized as retail sales or services in this particular industry.

In the Miller case, supra, the Supreme Court of Pennsylvania held that a licensed optometrist, who purchases the glasses he prescribes for his patients from manufacturing opticians, adds their cost in his bill for professional services, and whose total charge includes a profit on the glasses thus purchased and sold to his patients, is a retail dealer within the meaning of the Mercantile License Tax Act of May 2, 1899, P.L. 184, as amended, to the extent that he sells such glasses; that the sale of the glasses was not a part of the professional services of an optometrist. The Court indicated that it was not impressed that an optometrist who sells glasses and mountings is in the position of a dentist who sells bridgework, or of a doctor who supplies medicine to his patient, and noted that the Commonwealth had very correctly not attempted to collect the mercantile tax in those instances; that the making of the bridgework by the dentist constituted a large part of the personal work of a dentist involving scientific work, labor and design; that the furnishing of medicine to a patient by a medical doctor is an inherent part of a physician's professional services in the treatment of sickness and disease. The Commonwealth of Pennsylvania makes no distinction in the case of the doctor as to whether his prescribed dosage is administered orally or hypodermically. Certainly, the dosage is consumed. By the same token the lotions, fluids and similar articles used by the hair stylist are just as effectually consumed as is the dosage administered hypodermically by the doctor.

As the Court well stated in Haynie, supra, "The essential distinction between a wholesaler and a retailer is that the person buying from a retailer is the ultimate user or consumer of the article or commodity and does not sell it again, whereas the one buying from a wholesaler buys only for the purpose of selling the article again." [96 F.Supp. 216].

The Government cites Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393, as having a bearing on the instant case. I think it is clearly distinguishable. In this case the defendant made phenolic aircraft parts for use in manufacturing aircraft subassemblies. Kanowsky's interstate commerce customers incorporated them into aircraft or parts thereof which they in turn sold to others. The Court of Appeals held that the sales of phenolic and phenolic parts were not for resale. The Supreme Court held this was error, that the "sales indisputably were made with the expectation that the parts would be incorporated in aircraft and that the aircraft would be sold. Such transactions are clearly within the concept of resale." In a sense the phenolic product was consumed but by the process of consumption it underwent a transformation or became part and parcel of something else which became a commodity for sale.

Consumption or loss of identity by themselves are not the sine qua non. In the instant case, the articles in question not only were consumed and lost their identity but they did not, as in Arnold v. Kanowsky, supra, become attached to something else and in that unified condition become an article of commerce.

**154**

For the reasons above stated, I conclude that defendant's establishment is exempt from the minimum wage and hour provisions of the Fair Labor Standards Act of 1938, as amended. An Order in accordance herewith will be entered.