**Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**FURMAN BEAUTY SUPPLY, INC.**

**No. 13638.**

United States Court of Appeals
Third Circuit.

Argued Nov. 16, 1961.

Decided March 1, 1962.

Robert E. Nagle, Washington, D. C. (Charles Donahue, Solicitor of Labor, Bessie Margolin and Morton Liftin, As-

sistant Solicitors, Ernest N. Votaw, Regional Atty., Washington, D. C., on the brief), for appellant.

Sidney E. Friedman, Harrisburg, Pa., for appellee.

Before BIGGS, Chief Judge, and KALODNER and STALEY, Circuit Judges.

BIGGS, Chief Judge.

The Secretary of Labor, pursuant to Section 17 of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 217 (Supp.1961), seeks an injunction restraining the defendant, Furman Beauty Supply, Inc., from violating the minimum wage, maximum hours and record keeping provisions of the Act.[1] Furman asserted as a defense that it is engaged primarily in intrastate commerce "and only in an insubstantial manner in interstate commerce". The president of Furman testified that the beauty supplies in which the company deals come to its place of business from various states "all over the United States". Furman argued that in any event it is exempt by reason of Section 13(a) (2) of the Fair Labor Standards Act.[2] The court below found that Furman was exempt from the Act on the ground last stated and refrained expressly from considering whether Furman's predominantly intrastate business was within the reach of the Act apart from the specific exemption provision. See 193 F.Supp. 151. This issue was not raised on appeal.

The pertinent facts are as follows: Furman, located in Harrisburg, Pennsylvania, is in the business of selling supplies (lotions, rinses, etc.) and occasionally equipment (dryers, cabinets, etc.) to beauty parlors. Only 3.5% of Furman's total sales are made to purchasers outside of the Commonwealth of Pennsylvania. The beauty supplies are expressly designated for professional use only and are so used, being applied during the various treatments performed by the beauty shops, to whom Furman has sold the supplies, on their customers. All the beauticians who testified at the trial stated that in their view the performance of these services did not involve the reselling of the supplies and that the profession regarded the supplies as being consumed thereby. The district court found that more than 50% of Furman's sales volume resulted from Pennsylvania sales, that defendant's customers did consume rather than resell and that Furman's sales were recognized as retail sales by the industry. The court therefore held Furman exempt pursuant to Section 13(a) (2). The Secretary has appealed.

■ We cannot agree with the conclusion reached by the court below. Assuming that Furman is an establishment of the type intended to be exempted by Section 13(a) (2) if it meets the percentage tests therein,[3] we conclude that the defendant has failed to meet two of the

---

1. Section 6, as amended, 29 U.S.C.A. § 206 (Supp.1961) (wages); Section 7, as amended, 29 U.S.C.A. § 207 (Supp.1961) (hours); Section 11(c), 29 U.S.C.A. § 211(c) (records). The 1961 amendments to Sections 6 and 7 are not effective in this action.

2. As amended, 29 U.S.C.A. § 213(a) (2) (Supp.1961). The retail and service exemption allegedly applicable in this case has been narrowed by the 1961 amendments to the Act. As operative here the subsection states that "the provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made

within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry". 52 Stat. 1067 (1938), as amended, 63 Stat. 917 (1949).

3. The Secretary argues on appeal that Furman's business is one which is outside the "retail concept" and thus not permitted to claim the exemption allowed by Section 13(a) (2). See Mitchell v. Kentucky Finance Co., 359 U.S. 290, 79 S. Ct. 756, 3 L.Ed.2d 815 (1959); Goldberg v. Roberts, 291 F.2d 532 (9 Cir. 1961). Our disposition makes the decision of this issue unnecessary.

statutory requirements. The provision allows exemption only if (1) 50% of the establishment's annual dollar volume of sales is made within the state, (2) 75% of the annual dollar volume of sales is not for resale and (3) 75% of the annual sales volume is recognized as retail sales in the industry. The burden is on the employer to establish his qualification for exemption. Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 394, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960). To carry this burden, Furman must show "plainly and unmistakably" that it comes within the terms and the spirit of the exemption provisions, which are to be narrowly construed. The Kanowsky decision, supra, at p. 392, 80 S.Ct. at p. 456. Viewing the evidence in the light of this principle of statutory construction we cannot sustain the district court's ultimate findings that "All of the sales made by defendant were retail sales recognized as such by this particular industry", and that "None of the merchandise sold by defendant to its beautician customers is resold by said customers but all of it is used and consumed in the various treatments administered by the beautician", both of which findings are prerequisite to exemption.

■ With regard to industry recognition of the sales as "retail sales", there is no evidence showing the percentage of annual sales volume attributable to supplies and equipment respectively. This deficiency is fatal when combined with Furman's failure to introduce any proof that sales of equipment, as opposed to sales of supplies, are known in the industry as retail sales. It is possible that equipment sales, not brought within the industry-recognition language of the statute, accounted for more than the permissible 25% of annual sales volume. The stipulation that these sales were made only from "time to time" will not suffice to sustain Furman's position where, as here, the statute exacts a requirement turning on a precise percentage of annual sales revenue. Cf. Mitchell v. Municipal Signal & Supply Company, 181 F.Supp. 152 (D.Mass.1960). This lack of percentage allocation also de-

stroys Furman's attempt to show industry recognition with regard to sales of supplies because the court below could not determine whether or not such sales constituted the requisite 75%.

■ Furman's omission of the pertinent percentages also demolishes its effort to show that the goods were "not for resale". There is no direct testimony that equipment sold was not for resale, although it might be argued that a stipulated fact, that there were occasional sales of equipment for installation in beauty parlors, would support the inference that the equipment was not sold for resale. But even if this be accepted, it is still impossible to determine whether the 75% minimum has been satisfied, unless, of course, sales of supplies also were proved to be goods not for resale. This the defendant has not done, and we deem erroneous the district court's conclusion to the contrary. Although the beauticians testified categorically that they do not resell and that in the opinion of the beauty culture profession the supplies are consumed by the beauty establishments, these assertions cannot be accepted as satisfying the statutory test in light of certain facts undisputed in the record. The lotions and creams are applied to the persons of the beauty shop clientele by Furman's customers. The beneficent effects, whatever they may be, of the supplies are received ultimately by women who visit the beauty shop, not by the hairdresser. To obtain these benefits, it is true that the customer pays but one price, which is dependent on the particular treatment desired. This charge does not vary with the amount of supplies dispensed; one woman may receive more or less of a lotion than the next, even though both choose the same treatment. But even though the beauty parlors do not charge separately for supplies used, they do not give them away. The prices charged are calculated to cover the cost of purchasing Furman's products.

Thus, the recipients pay for a service, consisting of the skilled application of the products to their persons. That the

supplies are transmitted as a part of a service, rather than being sold separately or as a component in other goods,[4] clouds but does not obliterate the ultimate fact that the supplies are resold by the beautician to the ultimate consumer. In this respect the situation presented is similar to that in Mitchell v. Sherry Corine Corp., 264 F.2d 831 (4 Cir.), cert. denied, 360 U.S. 934, 79 S.Ct. 1453, 3 L. Ed.2d 1546 (1959). In the cited case the Court of Appeals found that the defendant did not qualify for exemption because more than 25% of the meals prepared by it were resold by airline companies. The meals were provided by the airlines to first class passengers as a part of the service rendered. The airlines did not charge separately for the meals, but the cost was considered in establishing the rates to be paid by the passengers. These rates were fixed regardless of whether or not the flight-time coincided with mealtime. We think that the interpretation of the statutory language announced in Mitchell v. Sherry Corine Corp., supra, is correct and that it is determinative here.

We conclude, therefore, that the court below must be reversed because, as we have shown, Furman has failed to meet two of the statutory requirements for exemption. First, it has made no showing that 75% of its annual dollar volume of sales of supplies and equipment is recognized in the industry as retail sales, and second, it has not shown that 75% of its dollar volume is comprised of sales of goods not for resale.

Furman insists that even if it is not exempt an injunction should not issue in this case because the violations occurred in the past and it is presently complying with the Act. The complaint was filed on September 9, 1959. Defendant admitted violations of the minimum wage provisions in two instances late in 1957 and early in 1958. Although the Secretary's evidence of violations of the maximum hours and record keeping provisions is rather vague, Furman has con-

ceded that there was compliance with the Act only after this suit was instituted. Under these circumstances a nice question is presented as to the propriety of granting injunctive relief. However, it is one which we do not decide for we think that it is a matter properly addressed in the first instance to the discretion of the trial judge, who had no occasion to rule on this issue when judgment was entered below. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 213–215, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959). See Goldberg v. Thompson, 287 F.2d 421 (5 Cir. 1961); Mitchell v. Hodges Contracting Co., 238 F.2d 380, 381 (5 Cir. 1956). Cf. Mitchell v. Pidcock, 299 F.2d 281 (5 Cir. 1962).

The judgment will be reversed and the case remanded for proceedings not inconsistent with this opinion.

---

4. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).