**James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

**v.**

**BRAND NAMES, INC., a corporation, d/b/a Nautilus Congress Inn and Surfside Restaurant, Defendant-Appellant.**

**No. 29548.**

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1971.

Rehearing and Rehearing En Banc Denied Feb. 18, 1972.

John R. Brown, Chief Judge, specially concurred and filed opinion.

Herbert B. Mintz, Miami, Fla., for defendant-appellant.

Beverly R. Worrell, U. S. Dept. of Labor, Atlanta, Ga., Bessie Margolin, Carin Ann Clauss, Associate Sol., Dept. of Labor, Washington, D. C., Peter G. Nash, Sol. of Labor, Donald S. Shire, Atty., United States Department of Labor, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, PHILLIPS * and INGRAHAM, Circuit Judges.

* Of the Tenth Circuit, sitting by designation.

INGRAHAM, Circuit Judge:

This action was commenced by the Secretary of Labor under § 17 of the Fair Labor Standards Act[1] to enjoin violations of the Act's minimum wage and record-keeping requirements with respect to employees of defendant Brand Names' motel and restaurant, and to restrain the continued withholding of unpaid minimum wages and overtime compensation. Defendant, in its answer, denied that it violated the Act, claiming that prior to February 1st, 1967, the effective date of the 1966 amendments to the Act, its employees were employed at a restaurant and motel establishment coming within the statutory exemption provided by § 13(a)(2)[2] and, therefore, exempt from the minimum wage and overtime regulations, and that for the period subsequent to February 1, 1967, defendant complied with the requirements of the 1966 amendments.[3]

The district court, following a trial, rejected defendant's claim to exemption and entered judgment enjoining both future violations and the withholding of $37,669 in unpaid wages for the period in question.

The relationship of the parties was largely stipulated. Defendant Brand Names, Inc., operates the Nautilus Congress Inn and Surfside Restaurant in Cape Coral, Florida. Defendant is a wholly owned corporate subsidiary of Gulf American Corporation, a real estate developer of Cape Coral and other communities. Defendant's motel and restaurant, built by Gulf American in 1958, provide rooms, meals, beverages and public accommodation to members of the general public (including transients, guests, tourists, etc.), but more than 25% of their annual dollar volume of business is from providing food and lodging to travelers who have prepaid Gulf American under its so-called "Fly and Buy" program.[4]

Under this program resident and non-resident buyers or prospective buyers of homesites are encouraged by Gulf American to inspect its properties in Cape Coral on a three day visit. Gulf American's representatives advise these customers of the flat rate price for the visit, which is collected in advance and includes the entire cost of meals and lodging. Brand Names' representatives are informed in advance of the number of persons expected on the flight. When the prospective buyers arrive, they are routinely registered at defendant's motel. They receive a number of meals at the defendant's restaurant and often as many as 110 are fed essentially the same menu at one time.

On checking out the customers pay only for phone calls, room service and miscellaneous items. Defendant Brand Names gathers all the bills, attaches them to a master tally and sends them to Gulf American's computerized accounting office. There is a reduced rate of billing because of the method of "consolidated accounting" used.[5] Gulf American, upon receipt of the tally and bill, credits defendant's account in the amount so charged. A similar method is followed for meals served under the program at defendant's restaurant.

On this appeal, defendant argues principally that (1) where the defendant-employer serves goods to the ultimate consumer, but receives payment from a third party, such transaction is not "a sale for resale" within § 13(a)(2) of the Act, and (2) that the sale of the goods to the ultimate consumer is controlling and

1. 29 U.S.C.A. § 201 et seq. (1965).

2. 29 U.S.C.A. § 213(a)(2) (1965). The provisions applicable to the case at bar are quoted in note 7 *infra*.

3. *See* note 7 *infra*.

4. When a limited number of rooms are available in defendant's motel, preference is given to the customers of Gulf American Corporation over a member of the general public who may be traveling through Cape Coral.

5. The seasonal rate for each motel room is reduced by $2.00 and the individual bill and master tally submitted by Brand Names are computed on the basis of 50% of the reduced rates.

precludes the Secretary's "resale argument" by virtue of the statutory definition of goods.

The court below, relying heavily upon Mitchell v. Sherry Corine Corp., 264 F.2d 831 (4th Cir., 1959), rejected defendant's contentions and ruled in favor of the Secretary. After this ruling this court decided Hodgson v. Crotty Brothers Dallas, Inc., 450 F.2d 1268 (5th Cir., 1971) [opinion on petition for rehearing and rehearing en banc, October 19, 1971], a case which compels us to reverse the decision of the district court.

In *Crotty Brothers Dallas* the appellee Crotty operated the dining facilities at St. Stephen's, an Episcopal Church boarding and day preparatory school. Crotty did not collect money directly from the students, faculty or guests, but submitted a monthly statement showing its operating costs and received from the school the amount of its costs plus $750 per month.[6]

The court viewed the food service operation there as a catering service, but this did not bar the operation from asserting its status under the Act as a restaurant. The contractual relationship was described as follows:

> "In the broad category of services classified as 'catering,' one of the most common forms of contractual arrangements relating a caterer, the party managing the catered event, and the consumer of the catered food is substantially identical to the contractual setup relating Crotty, St. Stephen's, and the students in this case. The caterer contracts with the party managing the catered event to provide food service to third parties, and he is paid by the manager out of funds collected in advance from these third parties. In turn the manager of the

catered affair contracts with his 'customers' to provide not only food but also a range of other services, for example, hotel or club accommodations, entertainment, or educational seminars. From the 'customers'' collective point of view, they have no direct contact with the caterer; they normally pay their fees directly to the managing party for the entire range of services to be provided." Hodgson v. Crotty Brothers Dallas, Inc., April 30, 1971, at page 1280.

This analogy clearly applies to Brand Names' Fly and Buy program, i. e., the "caterer" would be Brand Names, the party managing the event would be Gulf American Corporation, which collects the funds or fees in advance from the consumer of the goods, the traveller.

The court in *Crotty Brothers Dallas* held that the tests and definitions of § 13(a) (2) are not the exclusive method by which the retail nature of sales and establishments is to be determined:

> "Therefore, regardless of the fact that, in the abstract, it might be possible to characterize the dealings of a caterer like Crotty as sales for resale than as direct sales to the consumer, the result inevitably flowing from such characterization, i. e., loss of exemption due to failure to satisfy the general definition of 'retail or service establishment' of § 13(a) (2), is averted by Congress' specific classification, evidenced in § 13(b) (18), of establishments providing catering services as retail establishments." April 30, 1971, at page 1281.

The *Crotty* opinion requires that we look to the entire statutory scheme to determine whether defendant is entitled to exemption from the Act. The court in its original opinion and its supplemental

---

6. Hodgson v. Crotty Brothers Dallas, Inc., April 30, 1971, at page 1271. The court, in its supplemental opinion, distinguished Mitchell v. Sherry Corine Corp., because there the restaurant operator sold food to an airline engaged in interstate commerce, which then resold and served the food to its passengers. In other words, the food was delivered to the airline, which then took possession of it. The restaurant operator had no contact with the consumers. Hodgson v. Crotty Brothers Dallas, Inc., October 19, 1971, on Petition for Rehearing, at page 1292. This distinction is germane to the instant case and we need not further consider Mitchell v. Sherry Corine Corp.

opinion on rehearing went into an extensive study of congressional history and intent, a portion of which we quote:

"Thus the Senate understood that the bill it passed in the 86th Congress exempted *all* restaurants.

"There is nothing in the bill introduced in the 87th Congress or in its legislative history to indicate that this understanding changed. The committee report accompanying the bill in the 87th Congress contained only patently neutral reference to the restaurant exemption it provided, and Senator McNamara stated to the Senate that this exemption was 'similar' to the one provided in the previous bill. Moreover, debate proceeded on the presumption that all restaurants were excluded. Any remaining doubt that the Senate bill of the 87th Congress might have signalled in its wording an intent to subject restaurants to the 'sale for resale' and 'recognition in the industry' tests of § 13(a) (2) prior to granting exemption is laid to rest by the statement of the managers on the part of the House in the conference committee report, which, in comparing the House and Senate versions of the bill, said

The Senate amendment provides both a minimum wage and overtime

exemption for employees of the following: hotels, motels, restaurants, . . . The House bill *reaches the same result* as the Senate amendment since under the bill's definitions these are service establishments *and therefore not covered* by the House bill.

"In harmony with the scheme of the House bill, which excluded from coverage *all* restaurants and caterers, the Senate bill excluded *all* restaurants, including caterers. This scheme was preserved in the compromise bill agreed upon in conference and ultimately enacted into law as the Fair Labor Standards Amendments of 1961, since that bill retained unaltered in sense and in form §§ 13(a) (2) (ii) and 13(a) (20), the exemption provisions of the Senate bill specific to restaurants and caterers." October 19, 1971, on Petition for Rehearing, at pages 1285–1287.

The clear import of this language is that Congress intended special treatment for the food service industries. In the instant case we broadly view the relationship between the § 13(a) (2) (ii) exemption under the 1961 amendments and § 13(b) (8) and § 13(b) (18) [formerly—13(b) (20)] under the 1966 amendments.[7]

---

7. Crotty Bros. Dallas, at page 1274, note 14, sets out the statutes applicable to the case at bar as follows:

14. After the 1961 amendments, § 13 (a) (2) read, in pertinent part:

The provisions of sections 6 and 7 shall not apply with respect to—

\* \* \* \* \*

(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—

\* \* \* \* \*

(ii) is in such an enterprise and is a hotel, motel, *restaurant*, motion picture theater; or is an amusement or recreational establishment that operates on a seasonal basis, or

\* \* \* \* \*

(iv) is in such an *enterprise* and has an *annual dollar volume of sales* (exclusive of excise taxes at the retail level which are separately stated) *which is less than $250,000.*

A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is *not for resale and is recognized as retail sales or services in the particular industry*; or . . . (Emphasis supplied.)

And the § 13(a) (20) exemption said:

The provisions of sections 6 and 7 shall not apply with respect to—

\* \* \* \* \*

(20) any employee of a retail or service establishment who is employed primarily in connection with the preparation or offering of food or beverages for human consumption, either on the premises, or by such services as cater-

The Court in *Crotty* considered that a *restaurant* as well as a caterer, could fall within the ambit of § 13(b) (18), which uses the same wording as former § 13(a) (20) under the 1961 amendments.[8]

■ The rationale of the *Crotty* opinion extends to a restaurant under the circumstances involved in the case at hand, i. e., because former § 13(a) (20) served a dual purpose as explained in *Crotty* the requirements and percentage tests of § 13(a) (2) are not the sole basis for determining what is a "retail or service establishment." Thus defendant's restaurant is entitled to its claimed § 13(a) (2) exemptions for the period prior to and after the 1966 amendments. Consequently, we reverse the district court ruling with respect to defendant's restaurant.

However, the *Crotty* decision is limited to restaurants, caterers, lunch counters and similar food service establishments,[9] and defendant's motel does not fit into any of these categories. The

ing, banquet, box lunch, or curb or counter service, to the public, to employees, or to members or guests of members of clubs; or . . . .

In 1966, Congress amended § 13(a) (2) to remove from the aegis of enterprise exemption, § 13(a) (2) (ii) relating to restaurants and the like, and added § 13(b) (8), exempting from only § 7, *i. e.*, the overtime provisions of the Act, all restaurants, etc., regardless of their inclusion in an enterprise. This section now reads:

(b) The provisions of *section 7* shall not apply with respect to—

\*   \*   \*   \*   \*

(8) any employee employed by an establishment which is a hotel, motel or *restaurant* ; or any employee who (A) is employed by an establishment which is an institution (other than a hospital) primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises, and (B) receives compensation for employment in excess of forty-eight hours in any work-week at a rate not less than one and one-half times the regular rate at which he is employed; . . . (Emphasis supplied.)

Likewise, Congress replaced § 13(a) (20) with § 13(b) (18), reading:

(b) The provisions of *section 7* shall not apply with respect to—

\*   \*   \*   \*   \*

(18) any employee of a retail or service establishment who is employed primarily in connection with the preparation or offering of food or beverages for human consumption, either on the premises, or by such services as catering, banquet, box lunch, or curb or counter service, to the public, to employees, or to members or guests of members of clubs; or . . . (Emphasis supplied.)

As a result, § 13(a) (2) became: Sec. 13. (a) The provisions of sections 6 *and* 7 shall not apply with respect to—

\*   \*   \*   \*   \*

(2) any employee employed by any retail or service establishment (except an establishment or employee engaged in laundering, cleaning, or repairing clothing or fabrics or an establishment engaged in the operation of a hospital, institution, or school described in section 3(s) (4)), if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s) or such establishment has an annual dollar volume of sales which is less than $250,000 (exclusive of excise taxes at the retail level which are separately stated). A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; or . . . . (Emphasis supplied.)

None of these amendments, which became effective 1 February 1967, affected the substance of the 1961 version of § 13(a) (2) relating to the exemption of retail or service establishments *in enterprises.* Under both the 1961 and 1966 versions of § 13(a) (2), it is necessary to show that a retail or service establishment *in an enterprise* has an annual dollar volume of sales which is less than $250,000, more than 50% of which dollar volume of sales is made in the state.

8. See, e. g., Hodgson v. Crotty Brothers Dallas, October 19, 1971, on Petition for Rehearing at pages 1287, 1289.

9. See, e. g., id., 1291.

district court, even under *Crotty*,[10] was correct in its application of the law as far as the motel was concerned and its decision in this regard is affirmed.

As previously indicated, the district court enjoined the defendant's withholding of $37,669 in unpaid wages. Because of our divergent treatment of defendant's restaurant and motel operations, we remand to the district court for a supplemental determination of the amount of unpaid wages due.

Affirmed in part, reversed in part and remanded.

JOHN R. BROWN, Chief Judge (specially concurring):

I concur fully as to the Court's affirmance and what is said about that in the opinion.

As to the reversal I concur but solely under the compulsion of *Crotty* about which—despite the articulate (and intricate) exposition of Judge Wilkey's opinions—I have many reservations. To the reservations generally I would add the particular one here that a single economic enterprise through the otherwise legal device of wholly owned affiliates with inter-company charges being satisfied by nothing more significant than a "bit" on the ubiquitous computer's tape is able to construct this new sort of A-B-C to make (i) Brand Names the caterer, (ii) the party manager Gulf American, and (iii) the numerous Fly and Buy John and Mary Does the consumers of the meals.

10. For example, the court in *Crotty* explained that the food operation, relying on expert witnesses belonging to restaurant trade associations, could not have sustained its burden of proof on "recognition as retail in the industry" without the wording of § 13(b) (18), which "includes in the category of retail establishments catering establishments. . . . " Hodgson v. Crotty Brothers

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

Dallas, April 30, 1971, at 1281.

In the instant case defendant's motel did not have the benefit of this "best disinterested source of all before it: the wording of the Act itself," *id.* at page 30, whereas for the restaurant it could rely on § 13(b) (20) under the 1961 amendments and § 13(b) (18) under the 1966 amendments.