**Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Appellee,**

v.

**STATE OF IOWA, Appellant.**

**No. 73–1500.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1973.

Decided Feb. 26, 1974.

Gibson, Circuit Judge, filed a dissenting opinion.

Lorna Lawhead Williams, Special Asst. Atty. Gen. of Iowa, Des Moines, Iowa, for appellant.

Jacob Karro, Atty., U. S. Dept. of Labor, Washington, D. C., for appellee.

Before GIBSON and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge. '

ROSS, Circuit Judge.

This action by the Secretary of Labor seeking enforcement of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), was filed in the district court for the District of Iowa against the State of Iowa. Through its agency, the Department of Social Services, the State of Iowa owns and operates several institutions wherein persons are employed at less than the minimum and overtime wages prescribed by 29 U.S.C. §§ 206 and 207. Upon stipulated facts the district court held that the State of Iowa was subject to the provisions of the Act. This appeal followed.

The undisputed facts show that each of the nine institutions is either a hospital, an institution primarily engaged in the care of the sick, the aged, mentally ill or defective who reside on the premises, or a school for mentally or physically handicapped or gifted children. Each of the institutions purchases or orders some of its goods and supplies directly from manufacturers, producers or suppliers located outside the state. Each institution has employees in the following categories regularly handling, selling, or otherwise working on, or

---

* The Honorable TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

with, merchandise and supplies received from out-of-state suppliers:

(1) professional, medical, psychiatric and nursing employees who, in the treatment of patients, administer medicines and drugs and use therapeutic equipment and other medical supplies and equipment, substantial amounts of which are manufactured or produced outside the state;

(2) nursing service employees, aides, attendants, and orderlies who, in providing patient care, handle cleaning supplies, medical supplies and equipment, bedding, linens, towels and hospital clothing, substantial amounts of which are manufactured or produced outside the state;

(3) food service and dietary service employees who prepare, serve and dispense food to patients, residents, employees and visitors, substantial amounts of which foods are grown, processed or produced outside the state;

(4) housekeeping, maintenance and custodial employees who, in the regular course of their duties, use cleaning supplies, equipment and appliances, substantial amounts of which are manufactured or produced outside the state;

(5) laundry employees who use and handle cleaning supplies, bedding, linens, towels and hospital clothing, substantial amounts of which are manufactured or produced outside the state;

(6) office and administrative employees who use office supplies and equipment, substantial amounts of which are manufactured or produced outside the state.

Section 6 and Section 7 of the Fair Labor Standards Act, 29 U.S.C. §§ 206 and 207, provide that every employer shall pay minimum and overtime wages to each of his employees who is engaged in commerce or in the production of goods for commerce *or is employed in an enterprise engaged in commerce or in the production of goods for commerce.*

An "enterprise engaged in commerce or, in the production of goods for commerce" is defined to be:

[A]n enterprise which has employees engaged in commerce or in the production of goods for commerce, including · employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—

\* \* \* \* \* \*

(4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit).

29 U.S.C. § 203(s).

The adoption of the "enterprise concept" in 1961 by Congress has been held to be clearly within the power of Congress under the Commerce Clause. Maryland v. Wirtz, 392 U.S. 183, 188–193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). Similarly, the amendment modifying the definition of "employer" to remove the exemption of the states with respect to the employees of certain hospitals, institutions, and schools was upheld. For the federal government, when acting within a delegated power, may override countervailing state interests. Maryland v. Wirtz, *supra,* 392 U.S. at 195, 88 S.Ct. 2017. *See also* Sanitary District v. United States, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925). Thus, if a state engages in economic activities that are validly regulated by the federal government when engaged in by private persons, the state too may be forced to conform its activities to federal regulation. Maryland v. Wirtz, *supra,* 392 U.S. at 197, 88 S.Ct. 2017. *See also* United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936).

Yet a state may assert its sovereign immunity in suits brought by private individuals under 29 U.S.C. § 216(b) to enforce the Act. Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri, 411 U.S. 279, 285, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) [Employees v. Missouri Public Health Dept.]. The vehicle to enforce a state's conformity to the Act is at issue in this case. Based upon reasons expressed hereafter, we find that the extension of FLSA coverage to state employees is not made totally meaningless by the availability of a sovereign immunity claim.

■ Section 216(c) and Section 217 give the Secretary of Labor the authority to bring suits for violations of the Act. *Cf.* Employees v. Missouri Public Health Dept., *supra,* 411 U.S. at 285–286, 93 S.Ct. 1614. Such suits by the Secretary of Labor in enforcing the FLSA, though brought in public interest, are suits by the United States. *See* Mitchell v. Robert DeMario Jewelry, 260 F.2d 929, 932 (5th Cir. 1958), rev'd on other grounds, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) (and cases cited therein). Suits by the United States against a state are not barred by the eleventh amendment. United States v. Mississippi, 380 U.S. 128, 140–141, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). Thus, this suit against the State of Iowa is not barred by a claim of sovereign immunity. The only remaining question here is whether the particular institutions are subject to the Act. This question must be answered in the affirmative if we can find that these institutions are enterprises engaged in commerce or in the production of goods for commerce, or, more simply put, if these institutions employ *any* employees who are engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 203(s).

■ Under both of the two criteria established by the Act, these institutions must be said to be enterprises within the purview of the Act. First, courts have repeatedly held on previous occasions that activities of the nature performed by some of the employees of the institutions are activities in interstate commerce. Specifically, the activities of employees in sending, preparing, and receiving purchase orders, shipment orders, invoices, bills, and checks;[1] in receiving direct deliveries of goods transported interstate and in handling, storing and moving such goods after their delivery but before disposition to the ultimate consumer;[2] in regularly transporting or accompanying patients or residents to points outside the state for treatment, diagnosis, and other purposes;[3] and in placing interstate telephone calls as a part of a regular course of business[4] must be held to be activities performed in interstate commerce. Due to the interstate nature of the employees' activities, each of the institutions is an enterprise engaged in commerce. 29 U.S.C. § 203(s).

Secondly, as defined by 29 U.S.C. § 203(s), an enterprise engaged in interstate commerce may be one where the employees simply handle, sell or otherwise work on goods that have moved in interstate commerce. According to the undisputed facts, many employees handle articles which have moved in interstate commerce.[5] Those activities bring the

---

1. Wirtz v. First State Abstract & Ins. Co., 362 F.2d 83, 87 (8th Cir. 1966).

2. Walling v. Jacksonville Paper Co., 317 U.S. 564, 567, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Walling v. Mutual Wholesale Food & Supply Co., 141 F.2d 331 (8th Cir. 1944).

3. Mitchell v. Kroger Co., 248 F.2d 935 (8th Cir. 1957).

4. Durkin v. Joyce Agency, 110 F.Supp. 918 (N.D.Ill.1953), rev'd, 211 F.2d 241 (7th Cir. 1954), rev'd per curiam, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740 (1955).

5. For example, it was agreed that medical employees administer drugs that have moved interstate, that employees that provide patient care handle cleaning supplies that have moved interstate, that food service employees dispense food that has moved interstate, and that housekeeping and laundry employees handle supplies that have moved interstate.

particular institutions involved within the purview of the Act if the articles handled by the employees can be determined to be "goods" as defined by the Act. 29 U.S.C. § 203(i). In other words, if the articles are wares, products, commodities, merchandise, or articles or subjects of commerce of *any character, or any part or ingredient thereof, that have not reached their delivery into the actual physical possession of the ultimate consumer thereof,* then they are goods within the definition of the Act and the mere handling of those goods by some institution employee prior to their delivery to the ultimate consumer renders the institution an enterprise engaged in commerce. Many cases have held that the institution itself is not the ultimate consumer of the articles set forth in the margin above. *See, e. g.,* Brennan v. Dillion, 483 F.2d 1334 (10th Cir. 1973); Wirtz v. Melos Construction Corp., 408 F.2d 626 (2nd Cir. 1969).[6] The constitutionality of 29 U.S.C. § 203(s) was upheld by the Court in Maryland v. Wirtz, *supra.* Thus, we conclude that each of the institutions are enterprises engaged in commerce.

Finally, we review the appropriateness of the relief granted by the district court. Section 17 of the Act provides:

> The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this [Act] . . . . .

29 U.S.C. § 217. The State of Iowa argued that a restitution award of the nature described above should not have been awarded by the district court.

Accordingly, first we note that the State of Iowa may not assert its sovereign immunity in a suit brought by the United States against the state. United States v. Mississippi, *supra.* Secondly, we have held that the financial hardship caused by the order is not a valid basis on which to deny the employees their remedy or to allow a wrong against the public to go uncorrected in a suit brought under the FLSA. Hodgson v. Taylor, 439 F.2d 288, 290 (8th Cir. 1971). Next, we find no merit in the argument that this action is, in substance, an action by the employees against the state to which the holding of the Second Circuit in Rothstein v. Wyman, 467 F.2d 226 (2nd Cir. 1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973) should be applicable. Rather:

> [T]he purpose of the injunction . . . is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest. It is true that as a result, money may pass from the employer into the pocket of the employee or, if he is not available, then into the coffers of the United States Treasury, but that enforced payment, which must be made even if the employee or his representatives or heirs no longer exist to claim it, is simply a part of a reasonable and effective means which Congress, after trial and error, found it necessary to adopt to bring about general compliance with [the Act].

Wirtz v. Jones, 340 F.2d 901, 904–905 (5th Cir. 1965). Finally, we note that the parties to this suit have entered into a stipulation that "should the questions presented be resolved in favor of [the Secretary of Labor], the parties will attempt to compute and agree upon the amount of any unpaid minimum wages

---

6. The profit-seeking nature of the enterprises at issue in the preceding authority does not distinguish them from the State of Iowa which in some instances does not impose any additional charge in the delivery of the goods to the patient or resident. The Act specifically rejects profitability as a criterion for inclusion under the enterprise concept. 29 U.S.C. § 203(r)(1). Thus, the absence of profitability does not render the State of Iowa the ultimate consumer with respect to the goods.

and overtime compensation due defendant's employees." Due to the foregoing considerations, we find that the restitution order is appropriate.

For the reasons hereinbefore expressed, the judgment of the district court is affirmed.

GIBSON, Circuit Judge (dissenting).

I respectfully dissent. I think the majority takes the final step in adopting an all-encompassing rationale of what constitutes interstate commerce. While recent cases in this field lend support to the majority in the broad language employed, the facts of those cases do not support the absolute denigration of State sovereignty that this case accomplishes. Admittedly, many prior decisions have taken great liberty with the concept of interstate commerce, but surely the framers of our Constitution never thought it would be so expansively construed as to reach the sovereign activities of a state. States engaged in performing their necessary, proper and sovereign governmental functions are now enmeshed within the concept's all-inclusive tentacles.

The concept of interstate commerce is now expanded to nullify the constitutional and sovereign rights of States, not only in the handling of their business activities, but in the conduct of their manifest governmental activities as well. The time has come when courts should take a realistic approach and accord to the states their remaining vestiges of sovereignty, presently being ground to ashes under the expansive interpretations now in vogue as to what constitutes interstate commerce. The result here can only be justified if we accept a premise that everyone employed in these United States is engaged in interstate commerce.

It is a fiction, albeit a legal fiction widely accepted, to hold that the State of Iowa, by its operation of these nine institutions as part of its sovereign power to provide for the general welfare of its citizens, is engaged in interstate commerce. Moreover, the resultant effect of our decision is so disruptive of and harmful to legitimate state interests[1] that the courts should not require compliance by a state as an employer with the Fair Labor Standards Act (FLSA) unless clearly mandated to do so. I do not believe the result reached by the majority is mandated by the FLSA.

First, I disagree with the majority's conclusion that the institutions involved are not the ultimate consumers of the goods allegedly a part of interstate commerce. If the institution is the ultimate comsumer, then it has no employees engaged in handling goods that have moved in interstate commerce.[2]

As support for its conclusion that an institution is not the ultimate consumer, the majority relies upon Brennan v. Dillion, 483 F.2d 1334 (10th Cir. 1973) and Wirtz v. Melos Construction Corp., 408 F.2d 626 (2d Cir. 1969). Neither of these cases involved institutions, state or private. In *Dillion*, the defendant was an individual who operated three apartment complexes. The court held that maintenance employees using various supplies were covered by FLSA as the tenants were said to be the ultimate consumers of the supplies, not the defendant, relying *inter alia* upon the rationale that there was a resale of the supplies because their cost was passed on to the tenants as part of their rental.[3] The

---

1. There can be no doubt that the import of this decision will require an adjustment in the State's fiscal policy, either by forcing a reduction of services in this or other areas or an increase in its citizens' tax burden.

   "It is one thing to force a state to purchase safety equipment for its railroad and another to force it to spend several million more dollars on hospitals and schools or substantially reduce services in these areas."
   Maryland v. Wirtz, 392 U.S. 183, 203, 88 S. Ct. 2027, 20 L.Ed.2d 1020 (1968) [Douglas, J. dissenting].

2. 29 U.S.C. § 203(i).

3. *But see*, Shultz v. Travis Edwards, Inc., 320 F.Supp. 834 (W.D.La.1970), rev'd on

existence of a resale has been an important factor in the courts' determination of who is the ultimate consumer for purposes of 29 U.S.C. § 203(i). Brennan v. Dillion, *supra*; *see also*, Goldberg v. Furman Beauty Supply, Inc., 300 F.2d 16, 19 (3rd Cir. 1962); Mitchell v. Sherry Corine Corp., 264 F.2d 831 (4th Cir. 1959), cert. denied, 360 U.S. 934, 79 S. Ct. 1453, 3 L.Ed.2d 1546 (1959).

*Melos*, which involved the coverage of a building contractor's employees, makes no mention at all of 29 U.S.C. § 203(i) and the "ultimate consumer" exemption contained therein. It seems obvious that a building contractor is not an institution. Further, he may well be considered an ultimate consumer. In Barbe v. Cummins Const. Co., 49 F.Supp. 168 (D.Md.), aff'd 138 F.2d 667 (4th Cir. 1943), the court held that a building contractor was the ultimate consumer of building materials, not the purchaser of the building in which the materials were incorporated.

I would hold that these State institutions are ultimate consumers. A contrary holding necessarily implies that the patients of these State-operated and State-financed institutions are the ultimate consumers. This conclusion is untenable when talking about the use of cleaning supplies, laundry items, office supplies and medical equipment. The State is the user of these items, not the patient, and its employees using these items thus are not handling "goods" as defined in § 203(i).[4]

It is possible to consider the patient as the ultimate consumer of the drugs, medicines and food supplies, but in the circumstances of this case I believe it erroneous to do so. "Ultimate consumer" is employed in the Act as a means of determining when articles have ceased their movement in interstate commerce. The concept provides protection from the "hot goods" liability provisions contained in 29 U.S.C. § 215(a)(1).[5] The drugs and medicines are dispensed by State employees in the course of State treatment of State patients residing in State institutions. These drugs and medicines have ceased their movement in commerce upon delivery to the State and the State is entitled to the benefit of the ultimate consumer exception.

The same rationale is equally applicable to those food items served to patients. However, it was stipulated that in two of the institutions canteens were operated which for a charge served visitors. This is not enough to find that interstate commerce is involved. As the State of Iowa correctly argues, such activities must be *related to the business purpose* of the enterprise.[6] This service, provided only as a convenience to visitors, is not related to the primary purpose of the institutions. *Cf.*, Shultz v. Travis Edwards, Inc., *supra*, 320 F. Supp. at 839–840.

---

other grounds sub nom. Hodgson v. Travis Edwards, Inc., 465 F.2d 1050 (5th Cir.), cert. denied, 409 U.S. 1076, 93 S.Ct. 685, 34 L.Ed.2d 665 (1973); Shultz v. Arnheim & Neely, Inc., 324 F.Supp. 987 (W.D.Pa.1969), rev'd on other grounds sub nom. Hodgson v. Arnheim & Neely, Inc., 444 F.2d 609 (3rd Cir. 1971), rev'd 410 U.S. 512, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973); and Shultz v. Wilson Building, Inc., 320 F.Supp. 664, 669 (S.D.Tex.1970), aff'd sub nom. Brennan v. Wilson Building, Inc., 478 F.2d 1090 (5th Cir. 1973), where the owners of rental space were found to be the ultimate consumers of supplies used in their business.

4. This has been recognized in the regulations promulgated by the Secretary of Labor. *See*, 29 C.F.R. § 779.240(a) (1970) which provided in part:

However, the mere fact that employees in conducting the business of the enterprise or establishment, are using machinery, equipment, work tools, and the like, which may have been moved in or produced for commerce, does not mean that they are handling, selling, or otherwise working on "goods" that have been moved in or produced for commerce within the meaning of section 3(s).

5. See 29 C.F.R. § 776.21 (1973) which in essence provides that the "hot goods" provision creates a liability for anyone transporting, delivering or selling in commerce, goods in the production of which the minimum wage and overtime provisions of the Act were violated.

6. 29 U.S.C. § 203(r).

Nor do I think that the second part of the enterprise test, whether there are any employees engaged in commerce, is met by these institutions. It is stipulated that employees at all of these institutions did make use of interstate facilities in carrying out their duties. This alone is not enough. The operation of these institutions by the State of Iowa is a purely local operation, a service provided for its residents out of purely local, not interstate considerations. The mere use of interstate facilities by employees as an incident of carrying out a purely local business does not constitute engaging in commerce. Stevens v. Welcome Wagon International, Inc., 390 F. 2d 75, 77 (3rd Cir. 1968); Chambers Const. Co. v. Mitchell, 233 F.2d 717, 722 (8th Cir. 1956); Hodgson v. Hyatt Realty, 353 F.Supp. 1363, 1373–1374 (M.D.N.C.1973), aff'd sub nom. Brennan v. Hyatt Realty, 489 F.2d 754 (4th Cir. 1974); Wirtz v. Sherman Enterprises, Inc., 229 F.Supp. 746, 752 (D.Md.1964).

The test is whether the work is directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.

Mitchell v. C. W. Vollmer & Co., Inc., 349 U.S. 427, 429, 75 S.Ct. 860, 862, 99 L.Ed. 1196 (1955).

It is only when engaging in interstate communication is a material portion of an employer's business activity that the employee engaging in the communication should be considered to be engaging in interstate commerce.

If the actions of the State in providing food, shelter, and treatment for its public charges constitutes interstate commerce, then nothing is left of a state's sovereignty. The heavy hand of the federal government, with its gigantic bureaucracy practicing suffocating paternalism, reaches all things and all people.

While recognizing the remedial purpose of the Act and the number of cases holding that the Act should be liberally construed to effectuate its beneficent purpose,[7] the remedial purpose of the Act should not be utilized to emasculate the sovereign rights of the states unless there is a clear constitutional basis for imposition of federal control on a state's sovereignty.

I would reverse the decision of the District Court and hold that the State of Iowa is not subject to the provisions of the Fair Labor Standards Act, 29 U.S. C. § 201 et seq., in its operation of these nine institutions.

7. *See, e. g.*, Stevens v. Welcome Wagon International, Inc., 390 F.2d 75 (3rd Cir.

1968); Wirtz v. First State Abstract & Ins. Co., 362 F.2d 83 (8th Cir. 1966).