George P. SHULTZ, Secretary of Labor,
United States Department of Labor

v.

The WILSON BUILDING, INC.,
a corporation.

Civ. A. No. 69–C–52.

United States District Court,
S. D. Texas,
Corpus Christi Division.

Aug. 27, 1970.

M. J. Parmenter and William E. Everheart, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Owen D. Cox, Boone, Davis, Cox & Hale, Corpus Christi, Tex., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

SEALS, District Judge.

The Secretary of Labor, United States Department of Labor brought this ac-

tion to enjoin defendant from violating the provisions of sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.), hereinafter referred to as the Act, and to restrain the withholding by defendant of payment of any minimum wage and overtime compensation found by the court to be due defendant's employees under the Act, together with interest thereon at the rate of six per cent per annum from the dates said amounts became due.

This cause having been tried before the court and having considered the pleadings, discovery, stipulations, exhibits, oral testimony of witnesses, and statements of counsel, the court now makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Defendant, at all times since February 1, 1967, has been a corporation having its principal office and place of business at 1701 Wilson Tower Building, Corpus Christi, Nueces County, Texas.

2. Defendant, during the period since February 1, 1967, has been engaged in the ownership and management of The Wilson Building and The Wilson Tower Building, and during the period since August 1, 1967 has been engaged in the operation of The Wilson Tower Garage and two (2) parking lots, all of which are located in Corpus Christi, Texas.

3. Defendant's annual gross volume of business done for each of the years 1966, 1967 and 1968, was in excess of $500,000, and its annual gross volume of business done for the year 1969 was in excess of $250,000.

4. United States mail and parcel post have been regularly delivered directly to the offices of some of The Wilson Building and The Wilson Tower Building tenants in every week by United States mailmen during the period since February 1, 1967, and in making such deliveries they use the elevators located in said buildings. A substantial portion of such mail and parcel post has been, and is being, mailed to these tenants from points outside the State of Texas.

5. Freight has been regularly received by tenants in The Wilson Building and The Wilson Tower Building in every week since February 1, 1967. Freight delivered to the tenants in such buildings above the street floor is transported by means of the passenger elevators in such buildings. A substantial portion of such regularly delivered freight has been shipped from places located outside the State of Texas direct to the addressee tenant.

6. There are two passenger elevators serving the Broadway Street entrance and two passenger elevators serving the Leopard Street entrance to The Wilson Building. There are no employee operators for the elevators at the Broadway Street entrance or at the Leopard Street entrance of said building. There is no starter for these self-operating elevators. The automatic elevators are operated by the mailman in making regular deliveries and by mailmen for parcel post and also by delivery men making freight deliveries.

7. The Wilson Tower Building has four passenger elevators serving it at the Carancahua Street entrance, which during working days are operated, and have been operated since February 1, 1967, by employees of the defendant. One elevator can be, and is at night and on Sundays, placed on automatic so no operator is necessary, and it is then operated by the passenger. Ordinarily, from 2,000 to 3,000 passengers travel on The Wilson Tower Building elevators (up and down) each day, 5 days each week. The passengers are tenants, employees of tenants and clients, customers and other persons doing business with the various tenants.

8. There are nine employees of defendant who are designated elevator operators operating elevators in The Wilson Tower Building. Elevators which are operated by employee operators carry passengers indiscriminately with no distinction as to the nature of business of the passenger. The postman delivering

mail has no priority rights to the use of any of the elevators and he usually rides with other passengers. Passengers have prior right to use of the elevators during business hours over freight and parcel post deliveries.

9. A mailman makes two regular trips per day in The Wilson Tower Building delivering mail. He is inside the elevator about five minutes during each day. He does not deliver mail to all the tenants each day, nor does he get off of the elevator on each floor of the building.

10. The ground-floor tenants in The Wilson Building and The Wilson Tower Building have outside entrances and a few have entrances from the building ground-floor lobbies. The employees of such tenants and their customers do not use the elevators to reach the offices of such tenants, nor are the elevators used to deliver regular mail, parcel post packages, and freight to such tenants.

11. The time of the operators of the four elevators in The Wilson Tower Building which is taken up solely in carrying interstate freight, and mailmen who carry regular mail and parcel post deliveries, is very small in comparison to the time required of the operators in connection with the other regular uses of such elevators. But the interstate deliveries of mail, freight and parcel post to The Wilson Tower Building are sufficiently regular, frequent and substantial in amount to constitute said elevator operators as being engaged in commerce; and the elevator operators are so closely related to the movement of commerce as to be a part of it.

12. Defendant employs individuals who do janitorial work in both The Wilson Building and The Wilson Tower Building, such as cleaning the various offices which are occupied by tenants, cleaning and waxing hallways, washing windows, keeping restrooms clean and stocked with soap, toilet paper and paper towels, emptying wastebaskets, vacuuming rugs, and similar types of work. All such services are performed for the ben-

efit of the tenants in the two buildings and are required by defendant's rental agreements, either directly or indirectly.

13. Defendant employs individuals who do maid work in both The Wilson Building and The Wilson Tower Building, such as cleaning the various offices which are occupied by tenants, keeping restrooms clean and stocked with soap, toilet paper and paper towels, emptying wastebaskets and dusting. All such services are performed for the benefit of the tenants in the two buildings and are required by defendant's rental agreements, either directly or indirectly.

14. Defendant employs maintenance employees who do such work as remodeling office space and making repairs in The Wilson Building and The Wilson Tower Building. All such work is performed for the benefit of the tenants in the two buildings and is required by defendant's rental agreements, either directly or indirectly.

15. Defendant employs one employee, Lupe Perez, who regularly, since February 1, 1967, has replaced burned-out light bulbs and fluorescent lamps throughout both The Wilson Building and The Wilson Tower Building in tenant offices, hallways and restrooms. The furnishing of such light bulbs and fluorescent lamps is required by defendant's rental agreements, either directly or indirectly.

16. All of the materials and supplies handled by employees of defendant doing janitorial work and maid work and by maintenance employees and by mechanical engineering employees are owned by defendant at the time they are used in and around The Wilson Building and Annex and The Wilson Tower Building. The defendant has complete control over such materials and can change brands and suppliers at will, without the consent of any tenant. The soap, paper towels and toilet tissue in the restrooms can be removed from the containers and replaced by defendant at will and such materials are available for use, not only by tenants, but by employees, clients and customers of tenants, employees of de-

fendant and sometimes strangers. The light bulbs and lamps in the various offices of the tenants can be removed and replaced by defendant at will without the consent of any tenant. The light bulbs and lamps purchased by defendant are used in the lobbies and hallways of the buildings owned by defendant, as well as in office space occupied by tenants. The wax, detergent and other cleaning materials are used in the lobbies and hallways of the buildings as well as in the office space occupied by tenants, and are used by defendant to preserve the halls, lobbies of the buildings, and to keep them clean, as well as to keep the office space occupied by tenants clean and neat and in a state of preservation.

17. The materials and supplies handled by employees of defendant doing janitorial work and maid work, and by maintenance employees and by mechanical engineering employees, are purchased by defendant from business concerns in Corpus Christi, Texas. Soap, paper towels and toilet tissue and the wax, detergents and other cleaning material are purchased primarily from one distributor which owns the materials on its shelves as a part of its stock of merchandise for sale, and it sells and delivers supplies to defendant from such stock of merchandise. The light bulbs and lamps are purchased from a distributor in Corpus Christi, Texas, who owns the stock of merchandise on its shelves, and it sells and delivers such items to defendant from the stock of merchandise the distributor owns and has on its shelves for sale. The materials purchased by defendant, from time to time, for repairing and remodeling the buildings, for the benefit of the tenants during occupancy of office space and for the preservation of the buildings, are purchased from the Corpus Christi office of a business concern which does business outside of Texas, as well as within the state. Such materials remain the property of defendant. Tenants are not entitled to remove from the buildings any materials used in making re-

pairs or in remodeling. A substantial portion of such materials are processed in Texas before the local office receives them. These materials are carried as a stock of merchandise and are owned by the wholesaler for sale to lumber yards and large individual purchasers, and the supplies delivered defendant are from the stock of merchandise on hand.

18. A substantial portion of the various materials purchased by defendant to be used by employees doing janitor and maid work and by maintenance employees and by mechanical engineering employees are shipped to the local wholesale and retail suppliers from points within the State of Texas.

19. But a substantial portion of the materials and supplies handled by defendant's janitors in the performance of their duties in every workweek since February 1, 1967 was manufactured outside the State of Texas.

20. Also, a substantial portion of the materials and supplies handled by defendant's maids in the performance of their duties in every workweek since February 1, 1967 was manufactured outside the State of Texas.

21. Further, a substantial portion of the materials installed and the supplies handled by defendant's maintenance employees in the performance of their duties in every workweek since February 1, 1967 was manufactured outside the State of Texas.

22. All the light bulbs and fluorescent lamps installed by the defendant are manufactured outside of the State of Texas.

23. There are no tenants in The Wilson Tower Building and there are no tenants in The Wilson Building engaged in the manufacture or production of goods for commerce.

24. The defendant is not, and never has been, engaged in the production of goods for commerce.

25. Since February 1, 1967, defendant has compensated certain of its employees at rates less than $1.00 per hour during the period beginning February 1,

1967, and ending January 31, 1968, at rates less than $1.15 an hour during the period beginning February 1, 1968, and ending January 31, 1969, and at rates less than $1.30 an hour thereafter.

26. Since February 1, 1967, defendant has employed certain of its employees for workweeks longer than 44 hours during the period beginning February 1, 1967, and ending January 31, 1968, for workweeks longer than 42 hours during the period beginning February 1, 1968, and ending January 31, 1969, and for workweeks longer than 40 hours thereafter, without compensating said employees for their employment in excess of such hours at rates not less than one and one-half times the regular rates at which they were employed.

27. Since February 1, 1967, defendant has failed to make, keep, and preserve adequate and accurate records reflecting the hours worked each workday and the total hours worked each workweek by many of its employees.

28. The amount of minimum wage, overtime compensation, or both, due defendant's elevator operators, janitors, maids, maintenance employees, mechanical engineering employees, parking garage employees, and parking lot employees has not been determined. However, such unpaid compensation shall be computed as follows:

(a) All amounts due prior to March 24, 1967, are barred by the two-year statute of limitations.

(b) The rates of pay, hours of work, and total earnings of defendant's employees shall be those reflected in defendant's payroll records and its daily or weekly time records, except it has been stipulated that employee Lupe Perez was paid a salary for a 40 hour workweek, that defendant's maintenance men were paid a salary for a 44 hour workweek, that employee Ray Cipriano and Frankie de los Santos worked alternating workweeks of 37½ hours and 45 hours and that employee Edward Fromm worked a basic 40 hour schedule.

(c) The regular rates of pay of defendant's salaried employees shall be determined by dividing the hours of work such salary was intended to compensate for into the salary.

(d) Employees who received a regular rate of pay of less than the applicable minimum wage, as set forth in section 6(b) of the Act, during the period since March 24, 1967, shall be due minimum wage compensation equal to the difference between what such employees should have received if compensated for their work at the applicable minimum wage rate and what the employees actually received as straight time earnings.

(e) Employees who did not receive overtime compensation for their employment for workweeks in excess of 44 hours during the period March 24, 1967, to January 31, 1968, in excess of 42 hours during the period February 1, 1968, to January 31, 1969, and in excess of 40 hours thereafter, shall be due overtime compensation equal to one-half of their regular hourly rates of pay in such workweeks, or the applicable minimum wage rate under section 6(b) of the Act, whichever is the largest, multiplied by the number of overtime hours worked.

(f) Interest shall be computed on any minimum wages and overtime compensation found due defendant's employees at the rate of six per cent per annum from the date such minimum wages and overtime compensation became due.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this action and of the defendant.

2. Defendant's elevator operators, janitors, maids, maintenance personnel, and mechanical engineers were "employees" of defendant since February 1, 1967, and defendant's parking garage personnel and parking lot personnel were "employees" of defendant since August 1, 1967 within the meaning of 29 U.S.C. § 203(e).

3. None of the employees of defendant are, or have been at any time mater-

ial hereto, engaged in the production of goods for commerce.

4. None of the employees of defendant are, or have been at any time relevant, engaged in an occupation directly essential to the production of goods for commerce.

5. Since February 1, 1967, defendant's janitors, maids, and maintenance employees have been engaged in the handling of materials that have been moved in or produced for commerce and would, therefore, be covered by 29 U.S. C. § 203(s) (5) if these materials were to constitute "goods", as that term is defined in the Act, 29 U.S.C. § 203(i). But these materials handled by the janitors, maids, maintenance employees and mechanical engineers are not "goods" under the definition in the Fair Labor Standards Act because such materials when handled and worked on by said employees are in the hands of the ultimate consumer.

6. Since February 1, 1967 defendant's elevator operators have been engaged in commerce (29 U.S.C. § 203(b). See Wirtz v. Columbian Mutual Life Insurance Company, 246 F. Supp. 198 (D.C.W.D.Tenn.1965), affirmed 6 Cir., 380 F.2d 903; Wirtz v. McClure, 333 F.2d 45 (CA 10, 1964).·

7. Since February 1, 1967, defendant has been engaged in related activities performed through unified operation and common control for a common business purpose and, as such, has been an enterprise within the meaning of section 3(r) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 203(r)).

8. Since February 1, 1967, defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s) (1) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 203(s) (1)).

9. Since February 1, 1967, defendant has violated the provisions of sections 6 and 15(a) (2) of the Act. (29 U.S.C. §§ 206 and 215(a) (2)).

10. Since February 1, 1967, defendant has violated the provisions of sections 7 and 15(a) (2) of the Act. (29 U.S.C. §§ 207 and 215(a) (2).

11. Since February 1, 1967, defendant has violated the provisions of sections 11(c) and 15(a) (5) of the Act and the Administrator's regulations issued pursuant thereto. (29 U.S.C. §§ 211(c) and 215(a) (5) and 29 C.F.R., Part 516).

12. The plaintiff is entitled to an injunction permanently enjoining defendant from violating the provisions of sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) and restraining the withholding by defendant of payment of minimum wage and overtime compensation found to be due defendant's employees since March 24, 1967, together with interest thereon at the rate of six per cent per annum from the date said amounts became due.

Counsel for plaintiff will submit an appropriate judgment.