Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,

v.

The WILSON BUILDING, INC., Defendant-Appellant.

No. 71-1813.

United States Court of Appeals, Fifth Circuit.

April 27, 1973.
Rehearing Denied May 22, 1973.

---

R. F. Wheless, Jr., Cole Thomson, Houston, Tex., Charles L. Hale, Jr., Corpus Christi, Tex., for defendant-appellant.

M. J. Parmenter, Dept. of Labor, Dallas, Tex., Carin Clauss, Bessie Margolin, Asso. Sol., Bobbye Spears, Atty., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and MOORE * and RONEY, Circuit Judges.

MOORE, Circuit Judge:

In this appeal we are asked to decide whether certain building service employees of the appellant-employer are engaged in commerce for purposes of the Fair Labor Standards Act (FLSA) [1] and whether said employees are therefore covered by the Act's minimum wage and other provisions.

---

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. 29 U.S.C. § 201 et seq., as amended.

2. 29 U.S.C. § 217.

3. 29 U.S.C. § 206(b).

4. 29 U.S.C. § 207(a)(2).

5. 29 U.S.C. § 211(c).

6. The prescribed minimum wage during the years in question was as follows:
   Feb. 1, 1967 to Jan. 31, 1968    $1.00
   Feb. 1, 1968 to Jan. 31, 1969    $1.15
   Feb. 1, 1969 to Jan. 31, 1970    $1.30
   Feb. 1, 1970 to Jan. 31, 1971    $1.45
   29 U.S.C. § 206(b).

7. Section 203(b) provides:
   (b) "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

**1091**

The action was brought by the Secretary of Labor pursuant to Section 17 of the Act [2] to enjoin appellant Wilson Building, Inc. ("the employer"), from violating the Act's minimum wage,[3] overtime,[4] and record-keeping [5] requirements and to compel payment, with interest, of compensation owing to the employer's building maintenance personnel. The employer admits that it paid the named employees less than the prescribed federal minimum wage during the period in question (1967–70),[6] that it failed to pay them the prescribed premium for overtime work, and that its bookkeeping records did not satisfy the Act's requirements. The employer, however, (1) denies that its payment and record-keeping practices were unlawful, arguing that it was not subject to the Act's requirements because it is a purely local business, and (2) urges that the district court erred in finding that the activities of the service employees engaged them in commerce for purposes of the FLSA. Concluding that appellant's elevator operators were engaged in commerce under 29 U.S.C. § 203(b),[7] and that appellant was an "enterprise engaged in commerce" under 29 U.S.C. § 243(r)-(s)(1),[8] the district court ruled

---

8. Section 203(r) provides, in relevant part:
   (r) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor: Provided, That, within the meaning of this subsection, a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement, (1) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or ad-

that appellant had violated the Act and granted the relief sought by the Secretary. The district court's opinion is reported at 320 F.Supp. 664 (S.D.Tex. 1970). We affirm.

## I.

The relevant facts are not in dispute. Appellant is a Texas corporation doing business in Corpus Christi. It has offices in that city at 1701 Wilson Tower Building which, together with the adjoining Wilson Building (also an office building), the Wilson Tower Garage, and two parking lots, appellant owns and operates for profit. The office buildings are occupied by a miscellany of tenants, including lawyers, doctors, accountants, geologists, oil companies, lease brokers, and others. The buildings and parking facilities are maintained by various of appellant's service employees, including (1) elevator operators, (2) maintenance employees (*e. g.*, carpenters, mechanics, and plumbers) and (3) janitors and maids. The district court's findings as to each category of employees were as follows.

*Elevator Operators.*—Nine employees regularly operate the four elevators in the seventeen-story Wilson Tower Building. All four elevators transport passengers as well as persons delivering interstate mail, parcel post, and freight. Mail is delivered to the tenants twice daily, parcel post two or three times daily, and freight is delivered regularly each week to various tenants. The district court found that although the time devoted by the elevator operators to carrying postmen and freight deliverymen is small in comparison to the time devoted to the carrying of other passengers,[9] "the interstate deliveries of mail, freight and parcel post to The Wilson Tower Building are sufficiently regular, frequent, and substantial in amount to constitute said elevator operators as being engaged in commerce; and the elevator operators are so closely related to the movement of commerce as to be a part of it." 320 F.Supp. at 666.

*Maintenance Employees.*—These employees remodel office space in appellant's two buildings and perform general carpentry and repair work for the benefit of tenants. The remodeling work is done at the request of tenants, pursuant to the rental agreement, subject to the approval of appellant. The lower court found that a substantial portion of the materials installed and supplies handled by the maintenance employees, such as the lumber used for wall paneling, doors, etc., is manufactured outside the state of Texas, 320 F.Supp. at 667. In addition,

vertiser, or (2) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (3) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact it occupies premises leased to it by a person who also leases premises to other retail or service establishments. * * *

Section 203(s) provides, in relevant part:

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which—

(1) during the period February 1, 1967, through January 31, 1969, is an enter-

prise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) or is a gasoline service establishment whose annual gross volume of sales is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated), and beginning February 1, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated);
* * *.

9. In Montalvo v. Tower Life Bldg., 426 F. 2d 1135, 1143 (5th Cir. 1970) we held that "an employee may be engaged in commerce or in the production of goods for commerce within the meaning of the [FLSA] even though the time he devotes to the interstate activity is small in amount."

mechanics and plumbers maintain the air conditioning and heating systems in the buildings, and they, as do the other maintenance employees, handle replacement parts and goods which are manufactured out of state.

*Janitors and Maids.*—These employees perform custodial services for the benefit of tenants, as required by the rental agreement between tenants and appellant. Their work includes cleaning offices and hallways, stocking restrooms with soap, paper towels, and toilet paper, and replacing light bulbs and fluorescent lamps throughout the buildings. The district court found that a substantial quantity of the electrical and janitorial supplies handled by the janitors and maids is manufactured out of state.

As noted, the district court concluded that the elevator operators' transportation of mail, parcel post, and freight is regular, frequent, and substantial enough to render the operators "engaged in commerce" within the meaning of the Act, thus satisfying the requirement of Section 203(s) that appellant's enterprise have employees engaged in commerce. Regarding the maintenance employees, janitors, and maids, however, the court concluded that even though they handle products which have travelled interstate, they are not engaged in commerce because the products do not meet the Act's Section 203(i) definition of "goods".[10] The court determined that "such materials when handled and worked on by [appellant's] employees are in the hands of the ultimate consumer," *i. e.*, appellant, and that they therefore are out of the flow of commerce. 320 F.Supp. at 669. By virtue of the elevator operators' engagement in commerce, however, the court ruled that the other named employees are employed in an enterprise engaged in commerce and that they too are entitled to the benefits of the Act.

On appeal both appellant and the Secretary find fault with the district court's decision. Appellant argues that the court erred in finding that the elevator operators are engaged in commerce and in ruling that all the employees in question are covered by the Act's enterprise doctrine. The Secretary, while agreeing with the court's result, argues that the court erred by not ruling that the activities of the maintenance and janitorial employees provide independent grounds for sustaining enterprise coverage under the Act. Since we are of the opinion that the elevator operators are engaged in commerce within the meaning of Section 203(s) we need not, and do not, reach the question whether the activities of the other employees provide an independent ground for finding engagement in commerce; under the Act's enterprise doctrine [11] they are entitled to the benefits prescribed by the FLSA.

## II.

We begin our analysis of the question whether appellant's elevator operators are engaged in commerce mindful of Mr. Justice Frankfurter's exhortation that the "search for a dependable touchstone by which to determine whether employees are 'engaged in commerce or in the production of goods for commerce' is as rewarding as an attempt to square the circle." A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 520, 62 S. Ct. 1116, 1118, 86 L.Ed. 1638 (1942). In that case the Court, as it has in numerous cases since, recognized that application of the FLSA to an infinite number

---

10. 29 U.S.C. § 203(i) defines goods as follows:

    (i) "Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

11. For discussion of the 1961 amendments to the FLSA, which added the "enterprise doctrine" to the Act's provisions, *see* Note, 9 B.C.Ind. & Com.L.Rev. 487, 489–90 (1968); Note, 41 Notre Dame Lawyer 596, 597–99 (1966).

of industrial and commercial situations is essentially a line-drawing exercise, and that in delineating between areas of activities regulated by the Act and those left to state regulation, courts should be guided by the fixed points of national policy, legislative history, and administrative practicalities. 316 U.S. at 523, 62 S.Ct. 1116. Writing as we do thirty years after *Kirschbaum,* we are aided by a fourth guideboard—the long line of judicial decisions which have construed the outer reaches of the Act. We need not dwell on points which, by now, the cases have rendered irrefutable, although we do well to note at the outset the fundamental precepts that influence our reasoning in the present appeal. Thus, for example, it has been firmly established that the phrase "engaged in commerce" within the meaning of Section 203 of the FLSA is to be given a broad, liberal construction rather than a strained, technical one in order to effectuate the Act's purposes, Mitchell v. C. W. Vollmer & Co., Inc., 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196 (1955); Mitchell v. Lublin, McGaughy & Assoc., 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed. 2d 243 (1959); Shultz v. Mack Farland & Sons Roofing Co., Inc., 413 F.2d 1296, 1300 (5th Cir. 1969); that the Act has a remedial and humanitarian purpose, Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S.Ct. 698, 83 L.Ed. 949 (1944); Mitchell v. Ballenger Paving Co., Inc., 299 F.2d 297, 301 (5th Cir.), cert. denied, 370 U. S. 922, 82 S.Ct. 1565, 8 L.Ed.2d 503 (1962), which was designed to provide a minimum standard of living necessary for the health, efficiency, and general well-being of workers (29 U.S.C. § 202(a)), as well as to prescribe certain minimum standards for working conditions, Wirtz v. Ti Ti Peat Humus Co.,

Inc., 373 F.2d 209, 212 (4th Cir.), cert. denied, 389 U.S. 834, 88 S.Ct. 37, 19 L. Ed.2d 94 (1967); and that Congress intended the Act "to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce," Walling v. Jacksonville Paper Co., 317 U.S. 564, 567–568, 63 S.Ct. 332, 335, 87 L.Ed. 460 (1943); *see* Wirtz v. Columbian Mutual Life Ins. Co., 380 F.2d 903, 907 (6th Cir. 1967). Moreover, practical considerations, and not technical conceptions, guide us in determining coverage of the Act, and the "crucial test is the nature of the activities of the employee, rather than the general character of the employer's business," Wirtz v. Wohl Shoe Co., 382 F.2d 848, 850 (5th Cir. 1967). With these principles in mind, we turn to the activities of the elevator operators in the present appeal, and to the narrow issue of whether these activities engage the operators in commerce.

### III.

Section 203(b) of the FLSA defines commerce as including "trade, commerce, *transportation,* transmission, or communication among the several States" (emphasis added). In support of his position that the elevator operators are engaged in commerce because they transport interstate mail and freight which continue to flow in commerce until delivered to the offices of the tenants, the Secretary points to numerous decisions holding that employees whose duties are directly related to the transportation of goods in interstate commerce are themselves engaged in commerce within the meaning of the Act. Our attention is directed specifically to the line of cases beginning with Walling v. Jacksonville Paper Co., *supra.*[12]

---

12. *See also,* Mitchell v. Sunshine Dep't Stores, Inc., 292 F.2d 645, 647–649 (5th Cir. 1961) (employees, including elevator operators, handling and storing interstate merchandise at warehouse before distribution to local retail stores held to be engaged in commerce); Mitchell v. Royal Baking Co., 219 F.2d 532, 533–534 (5th Cir. 1955) (where we held that various employees handling goods shipped from out of state, including workers unloading and carrying same into warehouse, were engaged in commerce); Fleming v. A. B. Kirschbaum Co., 124 F.2d 567, 571–572

In *Jacksonville Paper Co.* the Supreme Court held that the FLSA was applicable to employees (truck drivers) of a wholesale paper company who transported from company warehouses within the state to retail stores also within the state interstate goods that had temporarily been detained at such warehouses. After noting that "the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce," (317 U.S. at 567, 63 S.Ct. at 335) the Court ruled that the interstate journey of the goods did not end, and the goods thus did not cease to flow in commerce, until they reached their final destination —the retail stores ("there is a practical continuity of movement of the goods until they reach the customers for whom they are intended"), 317 U.S. at 568, 63 S.Ct. at 335. The Court then stated:

> The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the Act is dependent on the character of the employees' work [citation omitted]. If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act. 317 U.S. at 571–572, 63 S.Ct. at 337.

It is plain to us that the goods transported by appellant's elevator operators (mail, parcel post and freight) continue to flow in interstate commerce beyond the lobby of the office buildings, where appellant argues the journey technically ends, and that they do not come to rest until delivered to the offices of the tenants. Furthermore, it is plain that without the labor provided by the elevator operators in transporting the mail and freight deliverymen throughout the building, the interstate goods would not be delivered to their intended recipients in each office. Appellant urges, however, that the activities of the elevator operators, even though related to the movement of goods traveling interstate, cannot be deemed to engage them in commerce since its business is strictly local in scope. This argument fails, however, in light of the numerous cases holding that applicability of the Act depends not on the character of the employer's business, but on the nature of the employee's work. *See, e. g., Jacksonville Paper Co., supra,* 317 U.S. at 571–572, 63 S.Ct. 332; *Mitchell v. Lublin, McGaughy & Assoc., supra,* 358 U.S. at 211, 79 S.Ct. 260.

Although we have not heretofore ruled on the precise question posed here, namely, whether elevator operators transporting mail and freight in an office building are engaged in commerce, we have had occasion to determine whether elevator operators engaged in other activities satisfied the Act's coverage requirements. *See, e. g.,* Mitchell v. Sunshine Dep't Stores, Inc., 292 F.2d 645, 647, 648 (5th Cir. 1961); *accord,* Sucrs. de A. Mayol & Co., Inc. v. Mitchell, 280 F.2d 477, 480–481 (1st Cir.), cert. denied, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960); Fleming v. A. B. Kirschbaum Co., 124 F.2d 567, 571–572 (3d Cir. 1941), aff'd sub nom. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517,

(3d Cir. 1941), aff'd sub nom., A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942) (elevator operators employed by owner who leased his building to tenants, some of whom manufactured goods shipped interstate, were directly engaged in commerce by carrying in elevators the finished products); McComb v. W. E. Wright Co., 168 F.2d 40, 42 (6th Cir.), cert. denied, 335 U.S. 854, 69 S.Ct. 83, 93 L.Ed. 402 (1948) (employees who spent 25% of their time unloading and storing both intrastate and interstate (15% of total) goods engaged in commerce); Sucrs. de A. Mayol & Co., Inc. v. Mitchell, 280 F.2d 477, 480–481 (1st Cir.), cert. denied, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960) (employees, including elevator operators and janitorial personnel, who received and stored goods within warehouse held to be engaged in commerce); McComb v. Herlihy, 161 F.2d 568, 570–571 (4th Cir. 1947); Clyde v. Broderick, 144 F.2d 348, 351 (10th Cir. 1944).

62 S.Ct. 1116, 86 L.Ed. 1638 (1942). *But cf.* Johnson v. Dallas Downtown Dev. Co., 132 F.2d 287 (5th Cir. 1942), cert. denied, 318 U.S. 790, 63 S.Ct. 994, 87 L. Ed. 1156 (1943); Tobin v. Girard Properties, Inc., 206 F.2d 524, 526 (5th Cir. 1953).

In *Sunshine Dep't Stores, supra,* the elevator operators, who were also warehouse employees, received, transported and stored shipments of interstate merchandise. The goods were delivered to the company's warehouse by independent carriers who deposited them at the foot of an elevator. The carriers "approximately 85 or 90 percent of the time" placed the goods on the elevator; the remainder of the time they were so placed by Sunshine's warehouse employees, some of whom then transported the goods by elevator to the second floor of the warehouse. 292 F.2d at 646. We held that the employees (elevator operators) so handling the goods were engaged in commerce within the meaning of the FLSA. 292 F.2d at 648.

In *Kirschbaum, supra,* the Third Circuit on facts similar to those of *Sunshine Dep't Stores* noted that elevator operators were "directly engaged in commerce for although their activities take place entirely within the state they carry out one step in the actual transportation of the goods to points outside

the state." 124 F.2d at 572 n.5. *Accord,* Schultz v. Blaustein Industries, Inc., 321 F.Supp. 998, 1008 (D.Md.1971) ("elevator operators * * * who regularly and recurrently carried postmen delivering mail and persons delivering materials moving in interstate commerce * * * were engaged in commerce"); Wirtz v. Columbian Mutual Life Ins. Co., 246 F.Supp. 198, 208 (W.D.Tenn. 1965), affirmed, 380 F.2d 903 (6th Cir. 1967).

Appellant relies primarily on two decisions, one of which is distinguishable from the facts of the present appeal, 10 East 40th Street Building, Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806 (1945), and the other with which we disagree, Houchin v. Thompson, 438 F.2d 927 (6th Cir. 1970). Although the facts in *Callus* bear some similarity to those of the present appeal, that case is not controlling because the issue there was whether building maintenance employees were, by virtue of the *tenants'* activities engaged "in the production of goods for commerce", and not whether, as here, the employees' *own* activities engage them "in commerce." Since *Callus* did not consider the question whether elevator operators regularly and frequently carrying interstate mail and freight shipments are themselves engaged in commerce the case is not helpful.[13] We similarly distinguished

13. Similarly distinguishable are two of our own past decisions dealing with elevator operators that relied on the *Callus* decision, Johnson v. Dallas Downtown Dev. Co., 132 F.2d 287 (5th Cir. 1942), and Tobin v. Girard Properties, Inc., 206 F.2d 524 (5th Cir. 1953). Neither case controls the present appeal because in neither case was the issue raised whether elevator operators transporting interstate mail and freight are engaged in commerce. In *Johnson* the issue was whether six elevator operators whose duties appeared to be limited to carrying passengers up and down the building were *engaged in the production of goods for commerce* by virtue of the *tenants'* activities, a question we answered in the negative, 132 F.2d at 289. In *Tobin,* various employees of an office building owner, including elevator operators, mechanics, janitors, and build-

ing maintenance engineers, argued that they were engaged in commerce on the ground that their work in a building 70% occupied by a tenant engaged in interstate commerce, the Southwestern Bell Telephone Co., was "an integral part of the operation of the telephone company's interstate communication system." 206 F. 2d at 526. After noting that the test for determining whether an employee is engaged in commerce "is not whether the employees' activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the *movement* of the commerce as to be a part of it," 206 F.2d at 527 (emphasis added), and noting that the decision in each case must turn upon its own peculiar facts, *id.* at 528, we held that the various employees were not engaged in commerce because their activities were

*Callus* in our recent decision in Hodgson v. Travis Edwards, Inc., 465 F.2d 1050, 1053–1054 (5th Cir.), cert. denied, 409 U.S. 1076, 93 S.Ct. 685, 34 L.Ed.2d 665 (1972), where we held that the employees of an office building corporation who regularly mailed monthly reports to out of state corporate officers were engaged in commerce or in the production of goods for commerce within the meaning of the Act. 465 F.2d at 1054. We were there persuaded that even though the monthly reports may have had no intrinsic value and were for internal corporate use only, their preparation and subsequent mailing by the office employees were sufficient to meet the Act's definition of commerce, *i. e.*, " * * * transportation, transmission, or communication * * *" among the states. And since the activities of the office employees clearly engaged them in commerce, we held that the other building employees, including maintenance personnel, parking lot attendants, and a single maid/elevator operator, were employed in a covered enterprise and thus entitled to the benefits of the Act. 465 F.2d at 1052. If, as in *Travis Edwards,*

the preparation and mailing of monthly reports to corporate directors and officers living out of state engage those sending the reports "in commerce" then, *a fortiori*, those involved directly in the transportation of the mail (the elevator operators in the instant appeal) are also engaged in commerce.

To the extent that appellant's other principal case, Houchin v. Thompson, *supra*, conflicts with our reasoning in *Travis Edwards, supra,* and because that decision attempts to revitalize the *de minimis* doctrine in FLSA cases (438 F.2d at 928–929) [14] which has been discredited by the Supreme Court in Maryland v. Wirtz, 392 U.S. 183, 192–193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968),[15] and by this Court in Shultz v. Kip's Big Boy, Inc., 431 F.2d 530, 535 (5th Cir. 1970),[16] we reject the Sixth Circuit's rationale in *Houchin.*

### IV.

In keeping with the Act's remedial and humanitarian purposes, and consistent with the Congressional intent of extending coverage under the Act to the farthest reaches of the channels of in-

too remote from the "in commerce" activities of the tenant telephone company, *id.* at 527–528. As far as we determine, in *Tobin* it was neither alleged nor argued that the elevator operators regularly and frequently transported mail and freight deliverymen as part of their regular duties. Since neither *Johnson* nor *Tobin* considered that issue, which is the central issue in the present appeal, those two decisions, relying on *Callus,* are, like the decision in *Callus,* readily distinguishable.

14. The Court in *Houchin* stated:
    "Where some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business, the rule of de minimis is applicable and the Act does not apply."
    438 F.2d at 928–929 (citation omitted).

15. "The only question for the courts is then whether the class [of employee activities affecting commerce] is 'within the reach of the federal power.' The contention that in Commerce Clause cases the courts have power to excise, as trivial, individual instances falling within a ra-

tionally defined class of activities has been put entirely to rest." 392 U.S. at 192–193, 88 S.Ct. at 2022 (citations and footnote omitted).

16. It was argued in *Kip's Big Boy,* as it was in *Houchin,* that the amount of time devoted by the employees to their "commerce" activities was "inconsequential" or only "occasional." We said, 431 F.2d at 535, that the *regularity* of the employee doing assigned interstate work which is necessary to the normal operation of the purely intrastate business should determine if the employee is substantially engaged in interstate commerce, not the exact number of hours spent, for if Kip's Big Boy were not able to receive and store its shrimp, etc. when they were regularly received, it would *substantially* damage the business. Moreover, this court has held * * * that the provisions of the Act apply to employees who spend one percent of their time in commerce. (footnote, citations omitted, emphasis added to the word "regularity.")
    *See also* Montalvo v. Tower Life Bldg., *supra* note 9.

terstate commerce, *see Jacksonville Paper Co., supra,* 317 U.S. at 567–568, 63 S.Ct. 332, the district court correctly, we think, analogized the labor of elevator operators transporting mail and freight to the labor of truck drivers transporting interstate goods between two points in the same state.[17] See Wirtz v. McClure, 333 F.2d 45, 46 (10th Cir. 1964); *Jacksonville Paper Co., supra,* 317 U.S. at 567, 63 S.Ct. 332. We agree with the district court and the Secretary that both activities satisfy the "transportation" requirement in the Act's definition of commerce.[18]

■■■ In the context of another Fair Labor Standards Act controversy the Supreme Court, per Mr. Justice Harlan, ruled that "the considerable discretion possessed by the Secretary as the one responsible for the actual administration of the Act should not be understressed." Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 205, 86 S.Ct. 737, 747, 15 L.Ed.2d 694, reh. denied, 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305 (1966). This Court is guided by that precept for, as in all matters regulated by a Congressionally authorized agency, judicial line-drawing in countless possible industrial and commercial situations should begin with deference to the expertise of the agency or administrator involved, especially in questions pertaining to the labor laws. See Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); NLRB v. Gissel Packing Co., 395 U.S. 575, 612 n.32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Having thus considered the relevant case law, Congressional intent, and administrative practicalities, and believing as we do that the FLSA should be given a

liberal interpretation, consistent with Congressional intent in favor of finding coverage, we hold that appellant's elevator operators are engaged in commerce. Since appellant is thereby a covered "enterprise" under the FLSA, the other named employees are also entitled to the minimum wage and overtime benefits of the Act.

The judgment is Affirmed.

---

**17.** In his Memorandum and Order dated August 14, 1969, the district court said (*see* Transcript, at 224–25):

> The court is satisfied that construing section 203(s) to include defendant's elevator operators is in accordance with this intent and purpose of the Act. The relationship between these elevator operators and the interstate freight carried in the elevators is interestingly

similar to that between truck drivers and their interstate load. In each case the only real relationship between the operator and the load being conveyed is the operation of the means of conveyance involved. And the operator of the motor vehicle is clearly covered by the Act.

(citations omitted).

**18.** See note 7 *supra.*