Ray MARSHALL, Secretary of Labor,
United States Department of Labor

v.

J. D. DAVIS, et al.

No. 77–3433.

United States District Court,
M. D. Tennessee,
Nashville Division.

April 24, 1981.

Robert C. Haynes, Nashville, Tenn., for plaintiff.

Malcoln L. McCune, Nashville, Tenn., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This action was instituted by the Secretary of Labor, under Section 17 of the Fair Labor Standards Act [hereinafter referred to as the Act] to enjoin defendant from allegedly violating the overtime[1] and record keeping provisions[2] of the Act, and to restrain defendant from withholding any overtime wages and compensation with accrued interest allegedly due employees.

Defendant is presently before this Court on a motion for summary judgment questioning the constitutionality of the pertinent provisions of the Act under Article 1, Section 8 of the United States Constitution. Plaintiff Secretary has filed a cross motion for partial summary judgment insisting that the Act is constitutional and therefore applicable to the regulation of defendant's business. Upon consideration of argument of counsel and review of the record, plaintiff's motion for partial summary judgment will be granted.

First, the issue of defendant's coverage under the Act is addressed. Second, the constitutionality of that coverage is examined.

### I.

Initially, the issue for resolution is whether the defendant's business constitutes an enterprise within the contemplation of the Act.

An enterprise is defined as:

... the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor ... 29 U.S.C. § 203(r).

A careful examination of the facts in this case indicate that the defendant has through unified operation and common control engaged in the performance of related activities for a common business purpose. Defendant is the owner and operator of Glen Valley Apartments and Duplexes and is part owner and managing partner of the Sycamore Apartments. As owner of these businesses, he employs individuals to manage the buildings and grounds. He has the authority to hire, fire, set wages and hours and other incidents of employment with regard to these employees. Defendant's operation therefore constitutes an "enterprise" within the meaning of the statutory provisions set out above. *Marshall v. Whitehead*, 463 F.Supp. 1329 (M.D.Fla. 1978); *Brennan v. Williams Investment Co., Inc.*, 390 F.Supp. 981 (W.D.Tenn.1975); *Brennan v. Patio Cleaners, Inc.*, 373 F.Supp. 987 (S.D.Ohio 1974).

A further determination is now required. Specifically, is this enterprise an enterprise with employees engaged in commerce or in the production of goods for commerce within the provisions of the Act? These provisions state in pertinent part:

Commerce is defined as:

... trade, commerce, transportation, transmission, or communication among the several states or between any state and any place outside thereof. 29 U.S.C. § 203(b).

Goods are defined as:

... wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof. 29 U.S.C. § 203(i).

An enterprise engaged in commerce or in the production goods for commerce is defined as:

---

**1.** 29 U.S.C. §§ 207, 215(a)(2).

**2.** 29 U.S.C. §§ 211(c), 215(a)(5).

... an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which ... is an enterprise ... whose annual gross volume of sales made or business done is not less than $250,000 ... 29 U.S.C. § 203(s).

A clear understanding of the resolution of this issue requires an examination of prior judicial and Congressional interpretation of these specific statutory provisions. Prior to the 1974 amendments to the Act which, *inter alia*, added the phrase "or materials" to § 203(s), the most controversial issue was whether the defendant employer fell within the "ultimate consumer" exemption found in the § 203(i) definition of "goods". Employers argued that if employees handle only items such as custodial or maintenance supplies that are utilized on the employer's premises, then these materials are in the hands of the "ultimate consumer", the employer. Such an interpretation exempted employers like the defendant in this case from regulation under the Act.

As in all cases requiring statutory interpretation, a conflict arose among the courts. While some courts accepted the argument outlined above[3], others rejected that theory stating that the cost of products utilized by maintenance staffs in performing services is passed on to the tenants through rent. Thus, the tenant becomes the true beneficiary and consumer, not the business.[4] At the time of the passage of the 1974 amendments, the emerging majority of the district courts was in accord with a clear holding in the Tenth Circuit[5], and dicta in the

Fourth[6], Eighth[7], and District of Columbia Circuits[8] in stating that employers were not ultimate consumers of these goods. Player, *Enterprise Coverage Under the Fair Labor Standards Act: An Assessment of the First Generation,* 28 *Vand.L.Rev.* 283, 337–341 (1975).

Enactment of the 1974 amendments resolved this conflict. The Senate Report of the Fair Labor Standards Amendments of 1974, Sen.Rep.No.93–690, 93rd. Cong., 2d Sess. at page 17 explains why "or materials" was written into § 203(s) in 1974:

The bill also adds the words 'or materials' after the word 'goods' to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e. g. the soap used by a laundry. The 'handling' language was added based on a retrospective view of the effect of substandard wage conditions.

While the original Act recognized the effect of such conditions on subsequent interstate *out* flow of products, it was not until the 1961 amendments that Congress specifically recognized their effect on the prior interstate *in* flow, based on the 'obvious economic fact that demand for a product causes its interstate movement quite as surely as does production' (107 Cong.Rec. 6236). See H.Rept.No.75, 87th Cong., 1st Sess. (1961), pp. 3, 8; S.Rept. No.145, 1st Sess., pp. 3–4; 107 Cong.Rec. 5841, 6234, 6236, 6240–6241. Although a few district courts have erroneously construed the 'handling' clause as being inapplicable to employees who handle goods

**3.** *Dunlop v. Industrial America, Corp.,* 516 F.2d 498 (5th Cir. 1975); *Brennan v. Wilson Bldg. Inc.,* 478 F.2d 1090 (5th Cir. 1973), *cert. denied* 414 U.S. 855, 94 S.Ct. 156, 38 L.Ed.2d 105 (1973); *Brennan v. Jaffey,* 21 Wage & Hour Cas. 971 (D.Del.1974).

**4.** *Brennan v. Dillion,* 483 F.2d 1334 (10th Cir. 1973); *Marshall v. Whitehead, supra; Brennan v. Williams Investment Co., Inc., supra; Brennan v. Patio Cleaners, Inc., supra.*

**5.** *Brennan v. Dillion, supra.*

**6.** *Shultz v. Falk,* 439 F.2d 340 (4th Cir. 1971), *vacated on other grounds sub nom.; Falk v. Brennan,* 414 U.S. 190, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973).

**7.** *Brennan v. Dillion,* 483 F.2d 1334 (10th Cir. 1973).

**8.** *National Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689 (D.C.Cir.1971).

used in their employer's own commercial operations (See, e. g. *Shultz v. Travis-Edwards, Inc.*, 320 F.Supp. 384, 19 WH Cases 806 (sic) (D.La.), revs'd on other grounds 465 F.2d 1050 (C.A.5, 1972), 20 WH Cases 749, cert. den., 409 U.S. 1076, 93 S.Ct. 685, 34 L.Ed.2d 665, 20 WH Cases 1040; *Shultz v. Wilson Building, Inc.*, 320 F.Supp. 664, 19 WH Cases 679 (S.D.Tex.), aff'd on other grounds, 478 F.2d 1090, 21 WH Cases 13 (C.A.5 1973), cert. den., 414 U.S. 855, 94 S.Ct. 156, 38 L.Ed.2d 105, 21 WH Cases 298; the only court of appeals to decide this question. *Brennan v. Dillion*, 483 F.2d 1334, 21 WH Cases 272 (C.A. 10 1973), and the majority of the district courts have held otherwise (See e. g. *Hodgson v. Rivermont Corp. d/b/a Fox Meadows Apartments*, 21 WH Cases 171, 71 CCH Lab.Cas. ¶ 32,898 (M.D.Fla.); *Hogson v. David M. Woolin & Son*, 20 WH Cases 91, 64 CCH Lab.Cas. ¶ 32,527 (S.D.Fla.); *Sharp v. Warner Holding Co.*, 21 WH Cases 206, 209, 70 CCH Lab.Cas. ¶ 32,821 (D.C.Minn.1972); *Mansdorf v. Ernest Tew Associates*; 20 WH Cases 956, 69 CCH Lab.Cas. ¶ 32,775, (M.D.Fla. 1972); *Hodgson v. Howard d/b/a Howard Cleaners*, 69 CCH Lab.Cas. ¶ 32,777 (N.D.Ala.1972); *Wirtz v. Washeterias, S.A.*, 304 F.Supp. 624, 18 WH Cases 671, 59 CCH Lab.Cas. ¶ 32,116 (D.Canal Zone 1968); *Hodgson v. Keller d/b/a Plaza Laundromat & Dry Cleaning*, 20 WH Cases 1073, 70 CCH Lab.Cas. ¶ 32,848 (D.Ohio 1973); *Shultz v. Union Trust Bank of St. Petersburg*, 307 F.Supp. 1274, 18 WH Cases 790 (M.D.Fla.1969) and the addition of the words 'and materials' will clarify this point.

The term "goods" is no longer the sole frame of reference in addressing the issue of employee handling of items moved in interstate commerce. The seemingly redundant addition of the phrase "or materials" to § 203(s) unequivocally clarified Congressional intent to broaden the scope of enterprise coverage. The term "materials" is neither burdened nor restricted with the "ultimate consumer" exemption found in the "goods" definition. "Consequently, the employee who handles soap, light bulbs, toilet paper and other maintenance and custodial supplies is clearly handling unadorned and unmodified 'materials that have been moved in commerce' ". Player at 341; *Marshall v. Whitehead, supra* at 1337.

■ Application of the facts in this case to the above analysis mandates a finding by this Court that the essential elements of the statutory requirements are satisfied. Annual gross volume of sales made or business done by the defendant exceeds the statutory requirement of $250,000 for each of the years at issue as stated in the stipulations in the pre-trial order. At all times relevant to this inquiry defendant regularly purchased supplies which were manufactured outside the state of Tennessee, shipped into Tennessee and purchased by him within Tennessee from local suppliers. Included in these supplies, according to the pre-trial stipulations, were paint, soap, detergents, caulking, plumbing supplies, plumbing equipment, light bulbs, heating equipment and air conditioning equipment. Although purchased locally, the paint, soap, light bulbs, heating equipment and other supplies had previously moved in interstate commerce. These items were received, handled, used and worked on by employees at all the apartment complexes owned and managed by the defendant.

The activities of defendant's employees in handling and working on these materials are clearly sufficient to bring the operation of defendant's business and, thus, his employees within the scope of enterprise coverage. *Brennan v. Dillion, supra.; Marshall v. Whitehead, supra.; Brennan v. Williams Investment Co., Inc., supra.*

## II.

Defendant moves for summary judgment asserting that the addition of the phrase "or materials" to 29 U.S.C. § 203(s) by the Fair Labor Standards Act Amendments of 1974 exceeds the power of Congress under the

commerce clause. Defendant argues that the Act as amended imposes federal regulations upon wholly intrastate businesses whose activities do not have the requisite substantial economic effect on interstate commerce. If true, such regulations would patently exceed the bounds of Congressional power. However, this Court rejects the premises upon which defendant's argument is based and denies defendant's motion for summary judgment for the following reasons.

Specifically, defendant avers that the addition of the term "or materials" in § 203(s) of the Act effectively eliminates the "ultimate consumer" limitation previously present in § 203(i) of the Act. This, defendant argues, has the practical effect of expanding "coverage of the Fair Labor Standards Act to every enterprise in the nation doing business of $250,000 a year ...". Brief in Support of Defendants' Motion for Summary Judgment, p 2–3, citing *Dunlop v. Industrial America Corp.*, 516 F.2d 498 (5th Cir. 1975).

Defendant states that the operation of his business is purely local in character and therefore should not be regulated. Even so, it is now well settled that:

> The power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce. *See McCulloch v. Maryland*, 4 Wheat. 316, 4 L.Ed. 579.

*United States v. Darby*, 312 U.S. 100, 118, 61 S.Ct. 451, 459, 85 L.Ed. 609 (1941). *See also, Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1947).

■ Before local activities can be regulated there must be a determination that those activities "might have a substantial and harmful effect upon that [interstate] commerce". *Heart of Atlanta Motel*, 379 U.S. at 258, 85 S.Ct. at 358. Contemporary commerce clause analysis by the Supreme Court instructs that the standard by which substantial economic effect is measured includes not only acts which if taken alone would have substantial economic effect, but also acts which would be nationally significant in their aggregate economic effect. This principle was first articulated in *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In *Wickard*, the Supreme Court held that Congress could control an individual farmer's production of wheat for home consumption because the cumulative effect of home consumption of wheat by many farmers would alter the supply and demand relationships of the interstate commodity market. *Id.* at 127–128, 63 S.Ct. at 90. This principle has been recently reaffirmed,

> Even activity that is purely intrastate in character may be regulated by Congress, where the activity combined with like conduct by others similarly situated, affects commerce among the states or with foreign nations. *Fry v. United States*, 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975).

■ Consequently, any determination of what is "in" or "out" of the stream of commerce is now totally irrelevant. Therefore, defendant's contention that once the "stream of commerce has ... ended before the goods come into the hands of the employees in question, the employment of these employees is not closely related to that commerce, and cannot substantially affect that commerce ..." is without merit. Brief in Support of Defendant's Motion for Summary Judgment, p. 6. An activity which takes place wholly intrastate can be regulated because of the impact those activities have in other states.

Having concluded that wholly intrastate activities may be regulated by Congress by virtue of its plenary powers under the commerce clause, it becomes necessary to determine whether the activities of this business have a substantial economic effect on interstate commerce. Again, this Court must look to the Supreme Court for the process by which this determination is made. Principles of judicial review of Congressional regulation require an examination of the express or implied findings of Congress upon which the contested statute is based. *Maryland v. Wirtz*, 392 U.S. 183, 192, 88 S.Ct. 2017, 2021, 20 L.Ed.2d 1020 (1968). Essentially, this means that there need not be a case by case determination that the activities of a particular business affect interstate commerce. Rather, the Supreme Court has defined the role of the judiciary this way:

> Of course, the mere fact that Congress has said when particular activity shall be deemed to affect commerce does not preclude further examination by this Court. But where we find that the legislators, in light of the facts and testimony before them, have a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce, our investigation is at an end. *Katzenbach v. McClung*, 379 U.S. at 303–304, 85 S.Ct. at 383.

Accordingly, the Congressional findings and prior judicial interpretation of the Fair Labor Standards Act will now be examined in order to determine whether there is a rational basis for regulating defendant's business and other businesses similarly situated.

*United States v. Darby*, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1946) presented the Supreme Court with its first opportunity to review the original Act. In so doing, the Court held the Act to be a legitimate exercise of Congressional power. *Darby* involved employees engaged in manufacturing goods for commerce. In that case, the employer argued that since manufacturing was an intrastate activity, Congress had no power to regulate the hours and wages of the businesses' employees. The Supreme Court responded, "[Congress may] by appropriate legislation regulate intrastate activities where they have a substantial effect on interstate commerce". *Id.* at 119, 61 S.Ct. at 459. In holding that a substantial effect on interstate commerce did exist, the Court deferred to Congressional findings. "Congress had found that substandard wages and excessive hours, when imposed on employees of a company shipping goods into other states, gave the exporting company [a competitive] advantage over companies in the importing states". *Maryland v. Wirtz*, 392 U.S. at 189, 88 S.Ct. at 2020.

In 1968, the Supreme Court again found it necessary to measure the reach of the Fair Labor Standards Act against the commerce clause in the case of *Maryland v. Wirtz*.[9] This time the contested issue concerned constitutionality of the concept of "enterprise coverage". *Id.* Congressional findings revealed three sources of support for the enterprise theory, thereby allowing the Court to find a rational basis for the enactment of the amended statute. First, the Court articulated the "competition theory" followed in *Darby*. Second, the Court agreed with the Congressional finding that labor strife which disrupts an enterprise involved in commerce may disrupt interstate commerce. The third finding adopted by the Court is a slight extension of the second finding: "There is a basis in logic and experience for the conclusion that substandard labor conditions among *any* group of employees, whether or not they are personally engaged in commerce or production, may lead to strife disrupting an enterprise (emphasis provided)". *Id.* at 192, 88 S.Ct. at 2021. Based on these Congressional findings, the Court found a rational basis for

---

**9.** *Maryland v. Wirtz* was overruled in part by *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

However, the constitutionality of the "enterprise coverage" concept was not disturbed by the Court in *National League of Cities*.

the statute and upheld "enterprise coverage".

Congressional findings and declarations of policy appear for the current Fair Labor Standards Act at 29 U.S.C. § 202:

(a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several states; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several states and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

The Senate Report of the Fair Labor Standards Amendments of 1974, Sen.Rep. No.93–690, 93rd Cong., 2d Sess. discussed the reason for the enactment of the original Act:

The Committee . . . believes that establishment of minimum wage rate at a level which will at least help to assure an income workers who do not currently enjoy such protection, and eliminating overtime exemptions where they have been shown to be unnecessary, the economy will be stimulated through the injection of additional consumer spending and the cre-

ation of a substantial number of additional jobs. *Id.* at 9.

The Senate Report further explained, as previously quoted in this opinion at page 327, that the purpose of the 1974 amendments at issue was to clarify Congressional intent to include this type of employee because:

While the original Act recognized the effect of such conditions on subsequent interstate *out* flow of products, it was not until the 1961 amendments that Congress specifically recognized their effect on the prior interstate *in* flow, based on the obvious economic fact that demand for a product causes its interstate movement quite as surely as does production. (cites omitted) *Id.*

■ Obviously, Congress has found that substandard wage conditions among employees who handle materials in the course of their employer's business affect the flow of interstate commerce. Further, Congress has found this effect on interstate commerce to be sufficiently substantial to warrant and, in fact, to compel corrective legislation. Logic clearly indicates that the aggregate effect of labor strife among these employees could certainly cause widespread interruption of the flow of commerce.

This Court does not disagree with the above Congressional findings and, therefore, holds that these findings serve as a sufficiently rational basis for the enactment of the amendments in question.